## CITY OF ST. LOUIS v. HENRY TIELKEMEYER, Appellant.

**Division One, March 1, 1910.**

1. **INFORMATION: Selling Liquor Without License: Agent: Bar.** Where the ordinance prohibits any person, "directly or indirectly, in person or by another," to sell intoxicating liquors "for or on his or their account," it is not necessary to specify whether defendant, who sold the liquor, in doing so was acting on his own account or as agent of another. Where the charge is that the man himself did the act it is immaterial whether he was acting for his own profit or that of another; and a conviction under such an information will be a bar to another prosecution against the same defendant for the same act.

2. ————: ————: **Charging Exceptions: Merchants' License.** Where the ordinance, in one section, forbids any person to sell intoxicating liquors without a license, and the definition of the act forbidden is complete in that section and no words of exception are contained therein, the information is not insufficient because it does not also charge that defendant did not come within the exception of another section which declares that the article shall not apply "to any sale of intoxicating liquors by any person under authority of ordinance regulating merchants' licenses." The rule requiring a negation of the exception applies only when the qualifying words are a part of the definition of the act forbidden and the doing of that act cannot be charged in the language of the statute or ordinance without negativing the exceptions.

3. **ORDINANCE: Conflicting with Statute.** A city ordinance is not valid if it is in conflict with the statute law of the State on the same subject.

4. ————: ————: **Crime.** The State has authority to declare an act to be a crime; the city has no such authority.

5. ———: ———: **Dramshop-Keeper.** There is no such material difference in the definition of the term dramshop-keeper as given by the statute and as given by the ordinance of St. Louis as affects a prosecution by the city for the selling of liquors without a license. The ordinance, in defining a dramshop-keeper as one who is not permitted to sell intoxicating liquors in excess of one gallon, whereas the statute says three gallons, does not render a person liable to a penalty for doing what he is authorized by the law of the State to do, and it is not therefore in that respect in conflict with the statute upon the same subject.

6. ———: ———: **Material Conflict: Selling According to Ordinance.** Since the ordinance forbids any person to sell intoxicating liquors "without a license first obtained therefor according to the provisions of this article," and provides that the license shall be obtained from a city license commissioner and prescribes the process, and all that was superseded by the Act of 1893 creating the office of excise commissioner, who is given the exclusive authority to grant dramshop licenses and a different process of obtaining a license is prescribed thereby, the two are in conflict; and as the only authority the city had for proceeding against defendant at the date he sold the liquor without a license was under the ordinance, a conviction cannot stand. The ordinance only forbids the selling of liquor without a license obtained according to the provisions of the ordinance, and after the Act of 1893 was passed no one could obtain a license in that way, and no authority remained in the city to prosecute one who failed to obtain a license in that way, and the city had not authorized a prosecution for selling without a license obtained in the way the statute prescribed.

7. **REPEALS: By Implication: Ordinances.** Repeals by implication are not favored, but that rule must yield to a necessary implication. Besides, the General Assembly in framing a statute is not expected to expressly refer to a city ordinance.

Appeal from St. Louis Court of Criminal Correction.— *Hon. Hiram N. Moore,* Judge.

REVERSED.

*Chas. H. Brock* and *Simon S. Bass* for appellant.

(1) A statement filed in proceedings under a city ordinance for the recovery of a penalty, must, in order to be sufficient, specify the elements of the offense sought to be charged with enough particularity to bar

another action for the same offense. St. Louis v. Babcock, 156 Mo. 148. (2) When the ordinance creating an offense sets forth an exception thereto, the statement, in order to be sufficient, must negative the exception. Tarkio v. Loyd, 109 Mo. App. 171. (3) The State has the power, by the enactment of a general law on any subject to repeal any provision of the charter of the city of St. Louis, or any ordinance enacted thereunder on the same subject. Constitution, secs. 23 and 25, art. 9; Charter, cl. 5, sec. 26, art. 3; St. Louis v. Dorr, 145 Mo. 466; State v. Kessels, 120 Mo. App. 240; State v. Stobie, 194 Mo. 14. (4) A special statute of this State, enacted in 1889, "confines and restricts" the city of St. Louis in the passage of its ordinances and in its jurisdiction within the limits prescribed by State law on the same subject. R. S. 1899, sec. 6258; St. Louis v. Meyer, 185 Mo. 583; Moberly v. Hoover, 93 Mo. App. 663; Warrensburg v. McHugh, 122 Mo. 649. (5) The definition of a dramshop-keeper under the city ordinance is inconsistent with the definition of a dramshop-keeper under the general law of the State, and therefore void. R. S. 1899, sec. 2990; St. Louis v. Meyer, 185 Mo. 583; St. Louis v. Wortman, 213 Mo. 131; St. Louis v. Klausmeier, 213 Mo. 119. (6) That part of section 2030 of the ordinance defining the offense is so related to the definition of a dramshop-keeper therein that if the definition of a dramshop-keeper therein is void as being inconsistent with the definition of a dramshop-keeper under the general law of the State, the whole of said section must be held void. State v. Bengsch, 170 Mo. 81; State v. Bird, 186 Mo. 205; Haag v. Ward, 186 Mo. 325. (7) Section 2031 of the ordinance relating to applications for dramshop licenses has been repealed *in toto* by the general law of the State, and, if so, that part of section 2030 which defines the offense with which appellants are charged, must be declared void for the reason that the two sections are so inter-

related and welded together as to be an entity, standing or falling together. R. S. 1899, secs. 3023, 2997; Laws 1905, p. 142; State v. Bengsch, 170 Mo. 81; State v. Bird, 186 Mo. 205; Haag v. Ward, 186 Mo. 325; State v. Higgins, 84 Mo. App. 531; Cooper v. Hunt, 103 Mo. App. 9; State v. Higgins, 71 Mo. App. 180; s. c., 97 Mo. App. 212; State v. McCammon, 111 Mo. App. 626; State v. Hoblitzelle, 85 Mo. 64. (8) The penalty section of the ordinance, section 2044, is void for the reason that it is inconsistent with the State law on the same subject, in that it prescribes a higher penalty for the act prohibited than is provided by the general law of the State. R. S. 1899, sec. 3004; State v. Taylor, 186 Mo. 608; State v. Anslinger, 171 Mo. 600; State v. Pond, 93 Mo. 645; Commonwealth v. Kimball, 21 Pick. (Mass.) 373; State v. Whitworth, 8 Port. (Ala.) 434; Smith v. State, 1 Stew. (Ala.) 506; Hoffman v. Commonwealth, 123 Pa. St. 75; Leighton v. Walker, 9 N. H. 59; Carter v. Hawley, Wright (Oh.) 75; State v. Callahan, 109 La. 946; Gorman v. Hammond, 28 Ga. 85.

*L. E. Walther* and *B. H. Charles* for respondent.

(1) The city has authority under its charter to license, regulate, tax or suppress saloons, bar houses, tippling houses, dramshops, and gift enterprises. Charter, art. 3, sec. 26, cl. 5; R. S. 1899, pp. 2485, 2486. (2) Every dramshop-keeper is required by law to take out both a State license and a city license. R. S. 1899, sec. 3026; Laws 1905, pp. 142, 143; State ex rel. v. Higgins, 71 Mo. App. 180; State ex rel. v. Bell, 119 Mo. 70. (3) All the provisions of the city ordinance respecting dramshops remain in force except such as have been repealed by the statutes creating the office of excise commissioner for the city. State ex rel. v. Bell, 119 Mo. 70. (4) It is no objection to an ordinance that it covers the same ground as a statute. St. Louis v. Bentz, 11 Mo. 43; St. Louis v. Cafferata, 24 Mo. 94; St. Louis v.

Delassus, 205 Mo. 578. (a) A defendant may even be subjected to two penalties for the same offense. St. Louis v. Cafferata, 24 Mo. 97; St. Louis v. Muir, 164 Mo. 610; State v. Gustin, 152 Mo. 108; Canton v. Mc-Daniel, 188 Mo. 228; Lebanon v. Gordon, 99 Mo. App. 277. (b) Merely because two laws are different does not make them inconsistent, and the mere fact that an ordinance differs from the general laws of the State will not invalidate it, provided it is not inconsistent therewith. St. Louis v. Cafferata, 24 Mo. 97; St. Louis v. Delassus, 205 Mo. 578. (c) "The right of a municipal corporation in this State to maintain in its own name a proceeding to recover a fine for non-observance of an ordinance has never been questioned, even though there be a general law of the State imposing a fine for a like offense." Ex parte Hollwedell, 74 Mo. 402; St. Louis v. Cafferata, 24 Mo. 94; State ex rel. v. Walbridge, 119 Mo. 392. (5) It was not necessary for the statements or informations to negative the provisions of an entirely different section from that in which the offense is defined and denounced. State v. Snyder, 182 Mo. 498; State v. Bockstruck, 136 Mo. 351; State v. Handler, 178 Mo. 42. (a) The matter found in section 2034 of the ordinance is not an exception within the meaning of the rule. (b) Where defendant comes within the provisions of a subsequent section or proviso, this is a matter of defense, and not to be pleaded in advance in the information. State v. Quinn, 170 Mo. 183; State v. Handler, 178 Mo. 42; State v. Snyder, 182 Mo. 498; State v. Bockstruck, 136 Mo. 351; State v. Jenkins, 139 Mo. 535.

VALLIANT, J.—Appellant was convicted in the Second District Police Court of St. Louis of selling intoxicating liquors without a license, in violation of a city ordinance, and appealed from that judgment to the St. Louis Court of Criminal Correction, where he was again tried and convicted and sentenced to pay a

fine of fifty dollars, from which judgment he has taken this appeal.

The testimony at the trial showed that appellant had committed the act specified in the information. There was no testimony to the contrary, nor did he claim to have had a license. There was at first some indication of a purpose on the part of appellant to construct a defense on the theory that he was acting as agent or officer of a social club dispensing its own liquors to its own members, but if he ever had such a purpose he abandoned it at the trial, for he offered no evidence to sustain it. He introduced in evidence the charter of what purported to be a social club, called the National Athletic Club, but offered no evidence to show the real character of the club or his connection with it. There is no such defense now claimed. The only grounds relied on by appellant for a reversal of the judgment are the alleged insufficiency of the information to state facts sufficient to constitute a charge of violation of the city ordinance and a denial of the validity of the ordinance itself. Points on those grounds were duly made in the trial court, and when ruled against appellant his exceptions were preserved in due form.

The city ordinance on which this prosecution is based, or so much thereof as is necessary to be considered in this case, is as follows:

"Sec. 2030. *Dramshop-Keeper Defined.*—A dramshop-keeper is a person permitted by law or ordinance to sell intoxicating liquors in any quantity less than one gallon. No person or copartnership of persons or corporation shall, in this city, directly or indirectly, in person or by another, sell, barter or deliver, for or on his or their account, any intoxicating liquors in quantities less than one gallon, without a license first obtained therefor, according to the provisions of this article, as a keeper of a dramshop.

"Sec. 2034. *Merchants Exempt from Article.*— This article shall not be construed to apply to any sale of intoxicating liquors by any person under authority of ordinance regulating merchants' licenses.

"Sec. 2035. *Amount of Licenses.*—For a license as a dramshop-keeper there shall be paid the sum of two hundred and fifty dollars for city purposes (and twenty-five dollars for State purposes), and any such license shall authorize the business therein designated to be carried on at one place only, and such license shall remain in force for the period of six months from its date; provided, that the license commissioner may, with the approval of the comptroller, issue any such license for a different period than six months, if necessary, in order that the State and city licenses to the same party may expire at the same time and at the date fixed by this article. No fee shall be charged by the license commissioner for administering oaths or taking affidavits.

"Sec. 2044. *Penalty.*—Whoever shall violate any of the provisions of this article shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be fined in a sum of not less than fifty nor more than three hundred dollars.

"Sec. 2045. *Duty of License Commissioner to Enforce.*—It shall be the special duty of the license commissioner to see that the provisions of this article are enforced."

Other sections of the ordinance prescribe how licenses are to be applied for, the process through which the applications are to go, the place where the licensee is to conduct his business, that the license shall not be transferable, that no license shall issue to conduct a dramshop in certain places, how and for what causes licenses may be revoked, etc., etc., which it is not necessary to set forth in full here.

The information in question is as follows:

"State of Missouri, City of St. Louis, ss.

"City of St. Louis, February 18, A. D. 1906.

"Henry Tielkemeyer to The City of St. Louis, Dr.

"To three hundred dollars for the violation of an ordinance of said city entitled: 'An ordinance in revision of the General Ordinances of the city of St. Louis.' Being Ordinance No. 19991, Chapter 31, Article 4, Sections 2030-2044. Approved April 3, 1900.

"In this to-wit: In the city of St. Louis, and State of Missouri, on the 18th day of February, 1906, said Henry Tielkemeyer did then and there sell intoxicating liquors in quantity less than one gallon, without first having obtained a license so to do, to-wit: second floor 1312 Franklin avenue, contrary to the ordinance in such cases made and provided."

I. Of that information the appellant says it is defective because, he says, it does not state the nature of the charges against him in language sufficiently specific to bar another prosecution for the same act, that is, whereas the ordinance prohibits any person from directly or indirectly, in person or by another, selling, etc., for or on his or their account any intoxicating liquors, etc., yet the information does not say whether this defendant, in doing the act specified, was acting in his own behalf or as agent for another.

So much of the language of the ordinance as refers to the doing of the forbidden act by an agent was designed to reach a person, firm or corporation who would not commit the act in person but through an agent. In such case both principal and agent would be guilty of violation of the law, the principal because he did it by his agent, the agent because he himself did it. Perhaps if it were intended to charge the principal with violating the law by the hand of his agent, it would be necessary to so specify in the information, but when it is charged that the defendant himself did the act it is sufficiently specific and it is immaterial whether he was acting on his own account or for his

employer.    No master can authorize his servant to violate the law, and no servant can excuse his unlawful act by saying that he was acting under the order or permission of his master.    For example if an information were lodged in the police court against the National Athletic Club, charging that corporation with violating this ordinance, it would probably be necessary to state by what agent the act was done, so as to distinguish it from another act of the same kind on the same day committed by another agent.    But when the charge is that the man himself did the act it is immaterial whether he was acting for his own profit or that of another.    This information is sufficiently specific to bar another prosecution against this defendant for the same act.

II.    Section 2030 of the ordinance, as we have seen, declares that no person, copartnership or corporation shall sell intoxicating liquors in less quantity than one gallon without a license ''first obtained therefor according to the provisions of this article,'' then another section of the same article, section 2034 says: ''This article shall not be construed to apply to any sale of intoxicating liquors by any person under authority of ordinance regulating merchants' licenses.''

Appellant contends that this information is defective because it does not state that in the selling of the liquor he was not acting under authority of the ordinance regulating merchants' licenses, and to support that contention he cites Tarkio v. Loyd, 109 Mo. App. 171.    In that case the ordinance, in defining the act forbidden, made certain exceptions, and it contained a proviso that it should not apply to persons of a certain class.    The exceptions and the qualifying words of the proviso were a part of the definition of the act forbidden and, therefore, the doing of the thing forbidden could not be charged in the language of the ordinance without specify-

ing the exceptions and the qualifying terms of the proviso with negative averments. The law was correctly applied to the facts of that case. But in the case before us the definition of the act forbidden by the ordinance is complete in section 2030 and there are no words of exception contained therein; the thing forbidden is the selling of intoxicating liquors in quantities less than one gallon, without a license ''first obtained therefor, according to the provisions of this article.'' In a subsequent section, section 2034, it is ordained that ''this article shall not be construed to apply to any sale of intoxicating liquors by any person under authority of ordinance regulating merchants' licenses.'' That section does not in terms except from the operation of section 2030 alone, persons acting under authority of the ordinance regulating merchants' licenses, but it says that the provisions of that article embracing not only section 2030 but the whole article, sections 2030 to 2044, are not to be construed as applying to the sale of intoxicating liquors by persons acting under the authority of the ordinance regulating merchants' licenses. If section 2030 stood alone it would probably have never occurred to the framers of the ordinance, that it was necessary to say that it should not be construed to apply to the sale of intoxicating liquors by persons under authority of the ordinance regulating merchants' licenses, because section 2030 specifically refers only to the sale of intoxicating liquors without a license ''according to the provisions of this article, as a keeper of a dramshop.'' But there are many other sections in that article some of which the framers of the ordinance might have thought were liable to be misconstrued as applying to persons acting under authority of the other ordinance and for that reason section 2034 was inserted in the ordinance to avoid misconstruction. For example this article prescribes how the license shall be procured, regulations of the business to be conducted under it, restrictions, etc.,

which were not intended to apply to the business to be conducted by persons acting under the ordinance regulating merchants' licenses.

We recognize the rule of law contended for by appellant that when an ordinance creating and defining an offense sets forth an exception thereto, the information must negative the exception, but there is nothing in this ordinance to which that rule can be applied. In State v. Bockstruck, 136 Mo. 335, the court said: "If the ingredients constituting the offense are capable of exact definition without reference to the exception or proviso, there such reference may with safety be omitted, since such matter contained in the exception, etc., is not descriptive of the offense, but only matter of defense to be brought forward by the accused." The rule as there stated has been approved and followed in State v. Handler, 178 Mo. 38; State v. Snyder, 182 Mo. 499. We hold that this information states the case sufficiently under the ordinance.

III. It is insisted by appellant that the city ordinance in question is void because inconsistent with the State statute on the same subject.

The city of St. Louis has express authority under its charter "to license, tax and regulate . . . saloons, beer houses, tippling houses, dramshops and gift enterprises." [Art. 3, sec. 26, clause 5.]

The State, however, has the sovereign power to regulate those matters and its authority being paramount, it follows that a city ordinance is not valid if it is in conflict with the law of the State on the same subject. Appellant contends that the ordinance under which he was convicted is in conflict with the statute law of the State in several particulars, which will be hereinafter discussed.

When we are considering the question of the validity of this ordinance in the light of the State statute we must keep in mind the essential difference between

the two acts.   The State has authority to declare an act to be a crime, the city has no such authority.

In City of Kansas v. Clark, 68 Mo. 588, it was held that a prosecution under a city ordinance for keeping a gambling table contrary to the ordinance was not a prosecution for a crime, but a civil suit to recover a penalty, the court saying: "Nor do we regard the violation of the ordinance under consideration as a *crime,* since 'a crime . . . is an act committed in violation of a *public law'* (4 Black., Com., 5); a law coextensive with the boundaries of the State which enacts it.   Such a definition is obviously inapplicable to a mere local law or ordinance, passed in pursuance of, and in subordination to, the general or public law, for the promotion and preservation of peace and good order in a particular locality, and enforced by the collection of a pecuniary penalty." That language was quoted and followed as the correct rule of law in State v. Muir, 164 Mo. 610, in which it was held that a conviction under a city ordinance against gaming was not a bar to a subsequent prosecution for the same act under the State statute; in that case the court said that the prosecution under the city ordinance was a civil action, and quoted Cooley's Const. Lim. (6 Ed.), p. 239, to sustain the doctrine. In Canton v. McDaniel, 188 Mo. 207, l. c. 228, the converse of the proposition was also held, that is, that an acquittal in a prosecution under the State statute was not a bar to a prosecution to recover the penalty prescribed in a city ordinance for the same act.   In City of St. Louis v. DeLassus, 205 Mo. 578, it was again said that a prosecution under a city ordinance to recover a penalty was a civil action, and that an ordinance was not invalid because it forbade and imposed a penalty for an act which the State statute declared to be a crime and for which it prescribed a penalty, and also that the ordinance was not invalid because it imposed a higher pecuniary penalty for the offense

than that imposed by the statute. In saying that a prosecution under an ordinance of this kind is a civil action the writer of this opinion is not expressing his own views on the subject, but is only saying that such is the law as it has been pronounced by this court and followed for many years.

Section 6258, Revised Statutes 1899, is: "Any municipal corporation in this State, whether under general or special charter, and having authority to pass ordinances regulating subjects, matters and things upon which there is a general law of the State, unless otherwise prescribed or authorized by some special provision of its charter, shall confine and restrict its jurisdiction and the passage of its ordinances to and in conformity with the State law upon the same subject."

There is nothing in any of the cases above cited that is in conflict with the requirements of that section. The city cannot forbid that which the State expressly authorizes. Section 8861 expressly excepted from the class of persons denominated peddlers persons engaged in selling "agricultural and horticultural products, including milk, butter, eggs and cheese," and by force of that statute it was held in St. Louis v. Meyer, 185 Mo. 583, to which we are referred by appellant, that a city ordinance which essayed to include such persons in that class was to that extent invalid. The city cannot call one a peddler and render him amenable to a penalty as a peddler whom the State has said is not a peddler. That is the point decided in that case and, on the same principle, we may now say that the city cannot call him a dramshop-keeper and render him amenable as such whom the State has said is not a dramshop-keeper, but that principle will not avail the appellant here because the city has not by its ordinance denounced as a dramshop-keeper any one whom the State has said is not a dramshop-keeper. The ordinance in question embraces within its terms,

and it subjects to its penalty, no one who is not embraced within the terms of the statute and subject to its penalty, but the statute embraces a larger class of persons than does the ordinance. One is liable under the ordinance if without license he sells intoxicating liquors in less quantity than one gallon; he is liable under the statute if without license he sells any quantity less than three gallons. If, therefore, he sells less than one gallon without a license he is subject to prosecution under the ordinance and under the statute also, but if he sells two gallons he is not within the displeasure of the ordinance, but is under the condemnation of the statute; the statute goes farther than the ordinance.

Section 2990, Revised Statutes 1899, Ann. Stat., 1906, p. 1714, defines the terms dramshop-keeper as follows: "A dramshop-keeper is a person permitted by law, being licensed according to the provisions of this chapter, to sell intoxicating liquors in any quantity, either at retail or in the original package, not exceeding ten gallons." Then section 2991 says: "No person shall, directly or indirectly, sell intoxicating liquors in any quantity less than three gallons, either at retail or in the original package, without taking out a license as a dramshop-keeper." In the ordinance the definition of the term dramshop-keeper is "a person permitted by law or ordinance to sell intoxicating liquors in any quantity less than one gallon," and it goes on to forbid any one selling intoxicating liquors in less quantity than one gallon without a license under the ordinance.

Appellant contends that the city ordinance is void because its definition of the term dramshop-keeper is different from that given in the statute. There is some difference but for the purposes of this case the difference is immaterial.

Where a statute treats of a particular subject by name and gives a definition of the name used it means

that when and wherever that name is used in that statute it is used in the sense of that definition.

The statute does not intend to invade the province of the lexicographers but only to specify the sense in which it makes use of the term. The word dramshop or dramshop-keeper has a wider meaning in its general significance than that given in the statute, but the statute, by its definition, restricts the meaning of the word to its own purposes. In the chapter of the Revised Statutes and in the article in the revised ordinances on the subject of dramshops there are many sections, besides those forbidding the sale and imposing the penalty, in which the word dramshop-keeper is used and it is used more conveniently because of the definition given. Therefore we conclude that the word dramshop-keeper as defined by the statute means that for the purposes of that statute a person must come within that definition in order that the provisions of the statute may apply to him, and so it is of the ordinance. Unless in the terms of this ordinance there is something that renders a person liable to a penalty for doing what he is authorized by the law of the State to do the ordinance is not in conflict with the statute. There is nothing in the ordinance now in question that infringes on any right the appellant has under the statute; the ordinance is within the statute. Therefore, although the definition of the term dramshop-keeper in the ordinance is different from that in the statute, yet the difference is immaterial, and although the ordinance does not reach persons selling intoxicating liquors in quantities more than one gallon, or in original packages as the statute does, yet it cannot be condemned because it does not go as far as it might lawfully go under the statute.

IV. There is, however, one point in the ordinance which is in conflict with the statute and it is a material point.

The language of the ordinance, in section 2030, under which the appellant is charged, is that no person shall sell "any intoxicating liquors in quantities less than one gallon, without a license first obtained therefor, according to the provisions of this article, as a keeper of a dramshop." Then follows section 2031 which provides for the issuance of a license by the city license commissioner, and prescribes how the party desiring the license is to proceed to obtain it, the channels the application is to go through, etc. But all of that was superseded by the Act of 1893, amended by the Act of 1905, now sections 3019 to 3026, Revised Statutes 1899, Ann. Stat. 1906, p. 1730. By those sections the office of excise commissioner is created for cities of 300,000 inhabitants or over; to the excise commissioner is given the exclusive authority to grant dramshop licenses and the process of obtaining such a license is prescribed by the statute, which process is different from that prescribed in the ordinance. The ordinance was enacted several years before the statute, or doubtless its terms would have conformed more closely to those of the statute. At the date on which the appellant is charged with selling intoxicating liquors in less quantity than one gallon without a license, the only authority the city had for proceeding against him was under that ordinance, and the only thing the ordinance forbade was selling the liquor without a license obtained therefor according to the provisions of the ordinance itself. By the terms of the ordinance the appellant would be guilty if he did the act specified, even though he had at the time a city license issued by the excise commissioner. Although in the information it is charged that he did the act "without first having obtained a license so to do," omitting to say, in the language of section 2030 of the ordinance, "according to the provisions of this article," yet the ordinance is referred to by number, chapter, article and

sections, and it means that the man is guilty of violating the ordinance because he did the act without having first obtained a license from the city license commissioner according to the terms of section 2031. Not only is that the correct interpretation of the information, but there is no authority for the city to prosecute in its own behalf a person for selling intoxicating liquors in less quantity than one gallon unless it be under the terms of section 2030, because although the city has authority under its charter to pass an ordinance forbidding the sale of intoxicating liquors in less quantities than one gallon without having first obtained a license according to the statute of the State, yet it has not, at least it had not at the date of appellant's alleged offense, done so. At the date when the ordinance was enacted it meant to forbid the sale of intoxicating liquors in less quantities than one gallon without first obtaining a license therefor from the city license commissioner, and there has been no change in it in that respect since its enactment. It means now only what it meant then.

It is argued in behalf of the city, on the authority of State ex rel. v. Bell, 119 Mo. 70, that all the provisions of the city ordinance remain in force except such as are repealed by the statute. That may be so, but section 2031 of the ordinance is entirely in conflict with the statute and therefore cannot stand; and as section 2030 only refers to persons who have not complied with the requirements of section 2031 it means nothing. The State statute was not intended to amend the ordinance; it was intended to supersede and render null all of the ordinance in conflict with it, and leave it to the city to amend its ordinance to conform to the statute.

The information is expressed in words to indicate that it was designed to avoid following the language of the ordinance in reference to the source of the license required; it used the general term "license" to

cover a license that might be issued by the excise commissioner. But in drawing the information the only authority the pleader had was the ordinance and he could not by a skilful use of words get beyond it, or charge as an offense an act that the ordinance itself did not forbid.

It is also argued that repeals by implication are not favored and that is so; but that rule must yield before a necessary implication. Besides the General Assembly in framing a statute is never expected to expressly refer to a city ordinance.

For the reason above given we hold that the information in this case charges no offense or states no facts that would render the appellant liable to the city as for a violation of the ordinance.

The judgment is reversed and the defendant is discharged. All concur.

*Chas. H. Brock* and *Simon S. Bass* for appellant.

*L. E. Walther* and *B. H. Charles* for respondent.