State of Missouri ex rel. Jesse Lee Hewlett and Roy Hewlett, Co-partners, Doing Business as Hewlett & Son Food Market, Relators, v. Ruel N. Womach (substituted for Herschel Bennett), Commissioner of Revenue of the City of Springfield, Missouri.—No. 39828.—196 S. W. (2d) 809.

Court en Banc, September 9, 1946.

Rehearing Denied, October 14, 1946.

*J. Weston Miller* and *Miller & Fairman* for relators; *Ethan A. H. Shepley* and *Fred M. Switzer, Jr.*, of counsel.

*Theodore Beezley, W. D. Tatlow* and *Nat W. Benton* for respondent.

*David M. Proctor,* City Counselor, and *John J. Cosgrove,* Assistant City Counselor, for Kansas City, Missouri, amicus curiae.

490

■ LEEDY, J.—The question presented is the validity of those provisions of Secs. 1 and 3 of General Ordinance No. 363 of the City of Springfield which, respectively, limit the number of places at which intoxicating liquor may be sold within the city; and require the applicant for a license "for the sale of intoxicating liquor or for the sale of 5% beer, in any form" within the defined residential district to present a petition bearing the signatures of 75% of the property owners within a radius of 600 feet of the proposed location "consenting to the establishing of such place of business and consenting to the granting of a license therefor."

Relators are now, and for a number of years have been engaged in the business of operating a grocery store in Springfield. They have a state permit or license, issued by the supervisor of liquor control, authorizing them to sell in the original package direct to consumers but not for resale, malt liquor containing alcohol in excess of 3.2% by weight and not in excess of 5% by weight. General Ordinance No. 384 of the City of Springfield requires that every person engaged in the occupation of selling such malt liquor at retail, in the original package, shall pay a license fee of $22.50 per year. Relators applied for such city license, but it was denied solely for these reasons; (1) That by the issuance thereof the number of licenses permitted by Sec. 1 Ordiannce No. 363 would have been exceeded; (2) The failure of the applicants to obtain and present the consent of the property owners, as prescribed by Sec. 3 of that ordinance. Whereupon relators instituted this original proceeding in mandamus to compel the issuance of said license. Our alternative ■ writ issued, respondent made return, and relators filed their motion for judgment on the pleadings. The facts are not in dispute, and the issues are those of law.

Both sections of the ordinance are challenged as being inconsistent with the Liquor Control Act Secs. 4874-4949,[1] and hence void; but, as there is an additional ground of attack upon Sec. 2, we shall not undertake to treat both sections together.

---

[1]This and all other references to statute sections are to R. S. '39, and to the same section numbers in Mo. R. S. A., unless otherwise expressly noted.

The charges of inconsistency with the Liquor Control Act, as applied to Sec. 1 of the ordinance, are: (1) That it attempts to make compliance with local rules a condition precedent to the granting of a local license, and to the exercise of relators' state granted privilege to sell package beer; (2) That it is in derogation of the public policy of the state as expressed in Sec. 4901, and contrary to the intent of the legislature in enacting the Liquor Control Act.

On the other hand, respondent seeks to uphold the validity of the section as an enactment of the municipal body in pursuance of a definite and express legislative grant of power conferred on municipalities by Sec. 4904 to "make and enforce ordinances for the regulation and control of the sale of all intoxicating liquors within their limits . . . where not inconsistent with the provisions of this act." The case turns on the construction to be given this provision. The limitation requiring consistency with the state law would apply even though it were not expressly stated in the grant of power. It is a familiar rule that municipal ordinances regulating subjects, matters and things upon which there is a general law of the state must be in harmony with the state law upon the same subject. Sec. 7442; Bardenheier v. City of St. Louis, 345 Mo. 637, 135 S. W. 2d 345, and Fischbach Brewing Co. v. City of St. Louis, 231 Mo. App. 793, 95 S. W. 2d 335 (both involving alleged conflicts between city ordinances and the particular act here in question); Ex parte Tarling, (Mo.) 241 S. W. 929; City of St. Louis v. Tielkemeyer, 226 Mo. 130, 125 S. W. 1123.

We have referred to the act as being "a comprehensive scheme for the regulation and control of the manufacture, sale, possession, transportation and distribution of intoxicating liquor." Bardenheier v. City of St. Louis, supra. Relators construe the term "comprehensive", as there used, as being synonymous with and meaning "all-inclusive", but this is erroneous. The express grant of power to municipalities (subject to the limitation of consistency with the state act) is itself a negation of all-inclusiveness; but the act is comprehensive in the sense of "including much; comprising many things, having a wide scope; inclusive." (Webster's New Int. Dict., 2d Ed.) Sec. 4908 in relation to the application of the act, reads as follows: "The provisions of this act shall be in force in and apply to every incorporated city, town or village in this state, whether same be organized under the general law relating to cities, towns and villages, or by special charter under the state Constitution, any ordinance or charter provision of any city, town, or village to the contrary notwithstanding." Whatever power the city has in the premises is derived from, and subject to the state act.

Relators argue that the grant of power to regulate and control is, as applied to package sales, merely that of regulating sales *after* license charges have been paid, and has no reference to the licensing

power of municipalities; but as to by-the-drink sales, it confers authority to impose conditions precedent to the granting of such a city license, and that this is evident upon a consideration of the Liquor Control Act as a whole, and certain sections in particular, which we shall notice. They point to differences in the licensing provisions as between these kind of sales as indicating such a legislative intent, and assert (as does respondent) that, under Sec. 4890[2] and Sec. 4901[3] (*as to 5% beer*) a state ▮▮▮ license to sell by the drink may be granted only upon the condition precedent that local ordinances are complied with and a local license secured;[4] whereas, by Sec. 4901 (which contains no such provision *as to package sale licenses*), it is further provided that package liquor "shall be sold . . . *upon a license granted by the supervisor of liquor control* . . . Provided, however, that no (such) license shall be issued . . . except to a person engaged in, and to be used in connection with the operation of one or more of the following business(es) : A drug store, a cigar and tobacco store, *a grocery store,* a general merchandise store, a confectionery and/or delicatessen store, nor to any such person who does not have and keep in his store a stock of goods having a value according to invoices of at least one thousand ($1,000.00) dollars, exclusive of fixtures and intoxicating liquors."

Great emphasis is placed on the supposed legislative policy expressed in the foregoing section to proscribe package liquor stores as such, and to diffuse the retail sale of package liquors in the general system of distribution of foods, drugs, tobacco and general merchandise, thus making it a minor, subordinate part of a normal business enterprise, and depriving it of the characteristics of a special, separate liquor industry or trade; specific requirement respecting compliance with

---

[2]"Any person who possesses the qualifications required by this act, and who meets the requirements of and complies with the provisions of this act, *and the ordinances, rules and regulations of the incorporated city in which such licenses proposes to operate his business,* may apply for and the supervisor of liquor control may issue a license, etc." (Sec. 4890.)

[3]Providing that what is commonly known as 5% beer (containing alcohol in excess of 3.2% by weight and not in excess of 5% by weight) "may be sold by the drink at retail for consumption on the premises where sold. *when the person* . . . desiring to sell said malt liquor . . . *shall have been licensed so to do by the incorporated city and county in which he proposes to operate his business,* and has procured a license so to do from the state supervisor of liquor control." (Sec. 4901.)

[4]This interpretation is vigorously challenged in the suggestions filed with leave of court by the supervisor of liquor control, who takes the view that such interpretation would be "a blow to state enforcement." His position is that "the granting of a state license to sell intoxicating liquor by the drink is not dependent upon the issuance of a license by the city, but on the contrary the act confers upon the supervisor of liquor control the authority to determine whether the applicant for a state license has complied, *as far as lies within his* (the applicant's) *power,* with the ordinances and rules and regulations of the city, and this, independent of any action by the city." It will be time enough to determine the contention if and when it arises under facts making it a direct issue.

local rules and ordinances on the part of package sale licensees is wanting. All of this in contradistinction to the policy evinced by the statute through the inclusion of such specific requirements in relation to applicants for by-the-drink licensees. In this connection it is urged that the quoted provisions of Sec. 4901 specifically qualify as licensees of packaged liquors all operators of bona fide grocery stores and other establishments named therein, provided such persons meet the requirements of Sec. 4906 (specifying qualifications—good moral character, prior liquor license not revoked, not convicted of violation of liquor laws, etc.) and Sec. 4896 (as to giving bond); and, as the ordinance denies them the privilege thus conferred by the state, it is out of harmony with the state act. We are of the opinion that these provisions constitute a limitation upon the authority of the supervisor, and restrict him in the issuance of package licenses to persons engaged in the business mentioned, rather than being a grant ' of a privilege to such grocers and others to the issuance of a license upon compliance with the other sections mentioned.

█ Sec. 4888, providing that the supervisor "shall have the authority to issue licenses mentioned in this act" is invoked, the contention being that the city is without authority to nullify the supervisor's act in issuing a license for the sale of package beer. Somewhat akin to this is the assertion that Sec. 4904 indicates its purpose was only to allow cities and counties to obtain revenue, and that by its provisions,[5] █ it is clear that the prospective licensee would first get his state license "and then merely make a payment of so much to the county or municipality for the license by such county or municipality;" and that if he did get his state license first, certainly there was no intention that the city might render it nugatory. In this connection it is sufficient to say that the whole section must be read together, and the grant of power relied on by respondent is a part of the section.

The circumstance that the local option features of the act (Sec. 4935 et seq.) are applicable only to sales by-the-drink (other than 5% beer) is not persuasive on the issue. We agree that the city may not prohibit package sales, but the ordinance does not do so. The section we are considering does no more than limit the number of outlets, and hence is a regulatory, as distinguished from a prohibitory, measure.

Does the wording of Sec. 4899 indicate a legislative recognition that local authorities were not given discretionary power or right to impose

---

[5]"In addition to the permit fees and license fees and inspection fees by this act required to be paid into the state treasury, *every holder of a permit or license authorized by this act* shall pay into the county treasury of the county wherein the premises described and covered by such permit and license are located . . ." a fee, "and shall pay into the treasury of the municipal corporation, wherein such premises are located, a license fee in such sum, etc. . . ." (Sec. 4904.)

local rules as to the issuance of licenses for package sales? That section first provides that nothing in the ''act shall be so construed as to authorize the sale of intoxicating liquor in the original package, or at retail by the drink for consumption on the premises where sold, in a place commonly known as a 'saloon'.'' Then follows the language to which relators- attach significance: ''And no license shall be issued by any city council, board of aldermen or other authorities of any city in this state, nor by the supervisor of liquor control, for the sale of intoxicating liquor at retail by the drink for consumption on the premises where sold, in a place commonly known as a 'saloon'.'' So that (as relators say) with regard to authority for the issuance of licenses, when the section makes reference to local authorities, it is only for sales by-the-drink, even though it is unlawful to sell package liquor in a saloon. Thus far the section bans both types of sale in a ''saloon'', and specifically prohibits the issuance of by-the-drink licenses, city *and state*, for such a place. It can no more be said that the *specific prohibition* indicates a legislative withholding of authority to local communities over package sales, than that, by implication, it authorizes licensing package sales in the very place denounced by the first part of the section, a ''saloon''. The meaning and intent of the section is apparent when the remainder of the sentence of which it is a part is read. It proceeds thus: ''nor in any building or room where there are blinds, screens, swinging doors, curtains or any other thing in such building or room that will obstruct or obscure the interior of such room from public view.'' Thus, in addition to prohibiting both types of sales in a place commonly known as a 'saloon', it specifically denies authority to cities and to the state alike to license by-the-drink sales in a saloon, or in a place having the usual indicia thereof, as in the section enumerated, even though the place be not commonly known as a saloon.

It is also suggested that municipal limitation on the number of package licenses was not contemplated by the act for the reason its effect might or could be to impair or destroy the state revenue to be produced through the collection of the inspection fees, on a gallonage basis, imposed by Sec. 4900.

Under Sec. 4889 the supervisor is given authority to issue rules and regulations including rules and regulations for the conduct of the business carried on by each licensee. It is said the rules and regulations promulgated under that authority do not provide for the limitation prescribed by the ordinance, and that it must be assumed that if Legislature gave the supervisor such blanket authority to issue rules and regulations, it also intended other regulations by municipalities would be in accordance with the act.

We have already expressed our views ▮ as to the regulatory nature of the section, and so pass without further comment the argu-

ment that the city's power to prohibit is limited to the single instance prescribed by Sec. 4948.

We have been cited to cases from other jurisdictions involving conflict between city ordinances and state acts relating to the sale of intoxicating liquors, but, as counsel admit, they are not of much assistance because of the dissimilarity between the acts construed by them and our own. Consequently it would serve no useful purpose to prolong this opinion by a review of those cases.

"When a municipal corporation is invested with power to license or regulate the sale of intoxicating liquors, it has implied authority to make all such ordinances as may be necessary to make the grant of power effectual, and to preserve the public peace, good order and security against dangers arising from the traffic in such liquors. It is only required that such ordinances should be within the scope of the powers granted, and not unreasonable, unjust, or unduly oppressive, or unfairly discriminating." 33 C. J., Intoxicating Liquors Sec. 70.

Where the power to regulate and control is delegated to a municipality, ordinances enacted in pursuance thereof which limit the number of licenses to be issued are upheld. See 30 Am. Jur., Intoxicating Liquors, Sec. 107, and the extensive annotations supporting this view in 124 A. L. R. 825 1. c. 829, and 139 A. L. R. 840. We do not understand that this proposition is seriously questioned, the point being that such authority was not conferred as to package licenses. We regard the language of the grant of power to municipalities "make and enforce ordinances for the regulation and control of all intoxicating liquors within their limits" as clear and unambiguous, and hold it extends to both package and by-the-drink sales. This, and the fact it is not claimed the ordinance is unreasonable in respect to the number of licenses prescribed by it reduces the question to whether the particular enlargement upon the requirements of the statute, as made by the ordinance, creates a conflict or inconsistency with the state act.

Division #1 of this court has recently spoken in an analogous situation, Vest v. Kansas City, 355 Mo. 1, 194 S. W. 2d 38, and which we regard as controlling. It was there said: "The fact that a state has enacted regulations governing an occupation does not of itself prohibit a municipality from exacting additional requirements. So long as there is no conflict between the two, both the statute and the ordinance will stand. 'As a general rule, additional regulation to that of the state law does not constitute a conflict therewith. The fact that an ordinance enlarges upon the provisions of a statute by requiring more than the statute requires creates no conflict therewith, unless the statute limits the requirement for all cases to its own prescriptions.' 43 C. J. Mun. Corps. Sec. 220 (b)." (1. c. 39.) There the state statute required registered barbers to be examined at least once a year and as often thereafter as the Board of Barber Examiners

deemed necessary. The ordinance required a barber to be examined at least once every six months. In holding there was no conflict between the two, the court further said: ''Such requirement of the ordinance does not in any way conflict with the statute, it merely supplements it by imposing requirements for additional physical examination. The purpose of the additional examinations is to enforce the same standard exacted by the statute, namely that a barber to practice his trade must be free of contagious or infectuous diseases. The ordinance does not attempt to impose a new or different standard. *It does not permit what the statute prohibits, nor does it prohibit what the statute permits.''* (Italics, the present writer's.)

And so it is here. The ordinance does not permit what the statute prohibits, nor prohibit what the statute permits. It merely enlarges upon the provisions of the statute by requiring something more than the statute requires (that the number of places shall not exceed a certain number), and the statute does not limit the requirements for all cases to its own prescriptions, because, as we have said, it is not all-inclusive.

We would not be justified in narrowing the letter of the grant of authority to regulate and control upon the charged implications of inconsistency hereinabove reviewed, and for the reasons noted, we hold Sec. 1 of the ordinance to be a valid regulatory measure.

 It is unnecessary to consider the attack upon the constitutional validity of Sec. 3 of the ordinance (that the requirement of consent of the property owners constitutes an unlawful delegation of legislative power to individuals) because it could avail relators nothing, the issuance of a license to them having been foreclosed under Sec. 1. Constitutional questions are ruled only when necessary to the proper disposition of a case. The peremptory writ prayed for is denied. *Douglas, Hyde,* and *Tipton, JJ.,* concur; *Ellison, J.,* and *Clark, C. J.,* dissent. *Gantt, J.,* absent.