Marion PASSLER, d/b/a Passler's Restaurant, Respondent,

v.

Fred R. JOHNSON, Director of Liquor Control of Kansas City, Missouri, and City of Kansas City, Missouri, a Municipal Corporation, Appellants.

No. 45886.

Supreme Court of Missouri,
Division No. 1.

July 8, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied Sept. 9, 1957.

Benj. M. Powers, City Counselor, James H. Coonce, Asst. City Counselor, James A. Moore, Kansas City, for appellants.

Robert L. Jackson, George V. Aylward, Dean C. Allard, Edward F. Aylward, Kansas City, for respondent.

COIL, Commissioner.

The trial court permanently enjoined appellants, Kansas City and its director of liquor control, hereinafter called defendants, from enforcing certain subsections of Kansas City's liquor control ordinance for the stated reason that the city "exceeded its powers under the statutes, Constitution, and the Charter * * *, in enacting Chapter 25, Subsection 15(b), (c) and (e) * * *."

Respondent, hereinafter called plaintiff, in this class action purports to represent himself and the class consisting of all licensed retail liquor dealers in Kansas City.

Kansas City's liquor ordinance is comprehensive. It establishes a director of liquor control and provides for the licensing and regulating of those engaged in the various aspects of making, supplying, and selling intoxicating liquor and nonintoxicating beer. Section 25–15, under the heading "Conduct of Business—Wholesalers," provided:

"(a) No person having a permit under the provisions of this chapter for the sale of intoxicating liquor or nonintoxicating beer at wholesale shall extend commercial credit to any retailer beyond the limitations provided in the state statute.

"(b) No person having a permit under the provisions of this chapter for the sale of intoxicating liquor or nonintoxicating beer at wholesale shall fail to report to the Director of Liquor Control later than the 3rd and 18th of each calendar month any and all retail accounts which may have become delinquent on or before the 1st and 15th of any calendar month as provided under the state statute.

"(c) No person having a permit under the provisions of this chapter for the sale of intoxicating liquor or nonintoxicating beer at wholesale shall sell, give away, or otherwise dispose of or suffer the same to be done any alcoholic beverage in any quantity to any retail permittee who is delinquent in payment to any other wholesaler as provided by the state statute.

"(d) All information obtained by the Director of Liquor Control under the provisions of this subsection shall be available at all reasonable times to any person having a wholesale permit under the terms of this chapter, or his duly authorized agent.

"(e) It shall be the duty of all persons having a wholesale permit under the provisions of this chapter to inquire of the Director of Liquor Control not later than the 5th and 20th of each calendar month to determine whether any retail permittee to whom delivery is about to be made is delinquent in payment to any other wholesaler as provided by the state statute. Failure to comply with the terms of this subsection shall be grounds for suspension or revocation of permit."

Appellants contend that Section 25–15, above set forth, is valid and constitutional municipal legislation, authorized by the

Kansas City Charter, and not in conflict with any provision of the state law. Respondent contends that subsection (c) is in conflict with provisions of Chapter 311, RSMo 1949, V.A.M.S., known as the "Liquor Control Act," and with provisions of Chapter 312, RSMo 1949, V.A.M.S., known as the "Nonintoxicating Beer Law," and that subsections (b) and (e) of the ordinance which specifically relate to the enforcement of the provisions of (c) were properly held invalid by the trial court. Respondent also contends, as he pleaded and contended below, that Section 25-15 violated Article I, Section 10 (due process), and Article I, Section 13 (impairment of the obligation of contract and retrospective effect) of the Missouri Constitution, 1945, V.A.M.S.

Evidence adduced on behalf of plaintiff consisted of the testimony of defendant, director of liquor control, plaintiff, and two other witnesses. The testimony of defendant Johnson was not pertinent to any issue before us in the view we take of the ordinance. Plaintiff, the operator of a restaurant and an ice business, and a resident citizen and taxpayer of Kansas City, had a license to sell liquor and beer in his restaurant and was a member of an association known as the Friendly Stores Group which was made up of various liquor and beer retailers. The Friendly Stores Group had a meeting or meetings at which the ordinance in question was discussed, and the inference is that members of the group authorized plaintiff to act in their behalf in attacking the pertinent ordinance provisions. Plaintiff also testified that he always tried to pay cash for his purchases of beer and liquor, but that in times of emergency, such as the 1951 flood in the west bottoms, it had been necessary for him to owe substantial sums of money to wholesalers; that the ordinance will not affect his business to any great extent, but that in his opinion, enforcement of the ordinance will affect adversely about twenty of his friends and will put some of them out of the retail liquor business.

Basil Sirna testified that he was buyer for Gold Crown Liquor Stores, a corporation operating two retail stores in Kansas City; that the corporation was a member of the Friendly Stores Group; and that the group, including the Gold Crown Liquor. Stores, was represented in the instant suit by plaintiff Passler. Sirna also testified that Gold Crown was in trouble financially three or four times a year, due to its buying large quantities of liquor when the prices are low; that unless the wholesalers are in position to extend extensive credit to retailers, the retailers' business will be adversely affected. Albert Donnici testified that he is co-owner of Kentucky Tobacco and Liquor Store which belonged to the Friendly Stores Group represented in this case by plaintiff Passler. In his opinion, the ordinance, if enforced, would create a hardship on him by cutting off supplies; that is, as we understand, he would be unable to obtain credit successively from various wholesalers but would need to borrow money to pay each wholesaler before he could make another purchase.

Are the ordinance subsections heretofore mentioned in conflict with any cited provisions of the Liquor Control Act or of the Nonintoxicating Beer Law? (All section references hereinafter are to sections of RSMo 1949, V.A.M.S., unless otherwise indicated.)

The Liquor Control Act and the Nonintoxicating Beer Law authorize the legislative bodies of incorporated cities to license, regulate, and control the sale of intoxicating liquors and of nonintoxicating beer so long as such legislation is not inconsistent with the provisions of the state law. Sections 311.040, 312.140. The supervisor of liquor control (both as to intoxicating liquor and nonintoxicating beer) is specifically authorized to establish rules and regulations for the conduct of each licensee's business and to make other rules and regulations necessary and feasible for effecting the provisions of the law. Sections 311.660(6)(10), 312.360(6)(10). Section 311.070 provides in part:

"1. Distillers, wholesalers, wine makers, brewers or their employees, officers or agents, shall not, under any circumstances, directly or indirectly, have any financial interest in the retail business for sale of intoxicating liquors, and shall not, directly or indirectly, loan, give away or furnish equipment, money, credit or property of any kind, except ordinary commercial credit for liquors sold to such retail dealers.

"2. Any distiller, wholesaler, wine maker or brewer who shall violate the above provisions of this section, or permit his employees, officers or agents to do so, shall be guilty of a misdemeanor, and upon conviction thereof shall be punished as follows:

"(1) For the first offense, by a fine of one thousand dollars;

"(2) For a second offense, by a fine of five thousand dollars; and

"(3) For a third offense, the license of said person shall be revoked."

The supervisor of liquor control, pursuant to the authority heretofore noted, contained in Sections 311.660 and 312.360, promulgated regulation 1(g) defining "ordinary commercial credit" and prohibiting the sale of intoxicating liquor and malt beer by a wholesaler to a retailer at a time when such retailer was delinquent in the payment of money owed to such wholesaler under the terms of "ordinary commercial credit" as therein defined. Regulation 1(g) was:

"1. *Malt Beverages.*—Ordinary commercial credit as used in the malt beverage and nonintoxicating beer industry shall be credit on such terms as shall require payment to be made by the retail licensee by the fifteenth (15) day of the month next succeeding the month in which the malt beverage or nonintoxicating beer is delivered to such retail licensee. No brewer or wholesaler shall sell or deliver to any retail licensee any malt beverage or nonintoxicating beer while such retail licensee owes such brewer or wholesaler for any malt beverage or nonintoxicating beer be-

yond the period of time in this paragraph set forth.

"2. *Intoxicating Liquor Other Than Malt Beverage.*—Ordinary commercial credit as used in the intoxicating liquor industry, other than the malt beverage industry, shall be credit on such terms as shall require payment to be made by the retail licensee within (30) days after the delivery of any intoxicating liquor, other than malt beverage, to such retail licensee. No distiller, wholesaler or wine maker shall sell or deliver to any retail licensee any intoxicating liquor, other than malt. beverage, while such retail licensee owes such distiller, wholesaler, or wine maker for any intoxicating liquor, other than malt beverage, beyond the period of time in this paragraph set forth."

We summarize the pertinent substance of Section 311.070 as supplemented by regulation 1(g): Wholesalers shall not directly or indirectly be or become financially interested in the retail liquor business and shall not, directly or indirectly, furnish credit to a retailer for liquor or nonintoxicating beer purchased by such retailer except on these terms, to wit, cash payable no later than 30 days after delivery for intoxicating liquor other than malt beverage, and cash on or before the 15th day of the month next succeeding the month of delivery to the retailer for malt beverage and nonintoxicating beer; and no wholesaler shall sell intoxicating liquor or nonintoxicating beer to any retailer at any time when such retailer is indebted to such wholesaler for money due for intoxicating liquor, malt beverage, or nonintoxicating beer beyond the time limits of the terms above set forth.

As heretofore noted, ordinance section 25–15, by subsection (a), adopted in toto the provisions of Section 311.070 as supplemented by regulation 1(g). By subsection (c), the ordinance provided that no wholesaler shall sell any alcoholic beverage to any retailer at any time when such retailer is indebted to *any* wholesaler for money

due for such beverage beyond the time limits of the terms set forth in regulation 1(g).

Thus it is apparent that under the state law a Kansas City retailer, even though indebted to a particular wholesaler beyond the time of the credit limits specified in regulation 1(g), could, nevertheless, purchase either for cash or on "ordinary commercial credit" from another wholesaler and from successive other wholesalers so long as he could find a willing new one. The terms of the ordinance, however, prohibited the sale to a retailer for cash or on credit so long as such retailer was delinquent in paying any one wholesaler. Therein, of course, lies the basis for the retailers' claims of hardship and irreparable damage if the ordinance, effective January 1, 1956, is enforced.

It is the position of plaintiff that subsection (c) of the ordinance is in conflict with Section 311.070 as supplemented by regulation 1(g). If so, that portion of the ordinance is invalid. Plaintiff contends that the ordinance subsection discloses on its face that it is inconsistent with Section 311.070 as supplemented by regulation 1(g), in that the state law does not prevent a retailer purchasing from successive wholesalers to whom he is not indebted beyond the time limits specified in regulation 1(g), while subsection (c) of the ordinance does prevent a retailer from purchasing from any wholesaler so long as that retailer is indebted to any wholesaler beyond the limits prescribed by regulation 1(g); therefore, says plaintiff, the ordinance prohibits that which the state law authorizes. Defendants contend that the ordinance only implements the provisions of the state statute and that the ordinance and the statute are in complete harmony.

■ The Liquor Control Act is a comprehensive but not all-inclusive plan to regulate and control the manufacture, sale, possession, transportation, and distribution of liquor. State ex rel. Hewlett v. Womach, 355 Mo. 486, 491, 196 S.W.2d 809, 812 [2, 3].

The fact, therefore, that the state has enacted regulations governing liquor wholesalers does not prohibit a municipality from exacting additional requirements from such wholesalers so long as there is no conflict between the statute and the ordinance. Vest v. Kansas City, 355 Mo. 1, 2, 3, 194 S.W.2d 38, 39. The Kansas City charter authorized that city to "restrain, regulate or prohibit the manufacture, sale or giving away of any wines, intoxicating or malt liquors" and to "license, tax and regulate trades, businesses and callings." Section 1(51), (57), Kansas City Charter, 1956 revision.

■ We are of the view that there is no conflict between the provisions of Section 311.070, as supplemented by regulation 1(g), and the provisions of subsections (b), (c), and (e), (or any of them), of Section 25–15 of the Kansas City ordinance. The fact that the statute prohibits a wholesaler from selling only to certain retailers does not mean necessarily that the statute thereby grants a privilege or license to wholesalers to sell to all retailers who are not within the specific prohibition of the statute. Whether, in accord with plaintiff's contention, the Liquor Control Act and the Nonintoxicating Beer Law affirmatively granted wholesalers the right to sell and, correlatively, retailers the right to buy, except as specifically prohibited by the state law, depends upon whether the state laws on the subject purported to preclusively regulate the subject matter dealt with. As we have noted, our state Liquor Control Act does not attempt to preclusively regulate but, on the contrary, specifically authorizes municipalities to enact ordinances, consistent with the state law, regulating wholesalers and retailers of alcoholic beverages. City of Maryville v. Wood, 358 Mo. 584, 588, 216 S.W.2d 75, 77. We construe the prohibition contained in the ordinance as only an enlargement of the same type of prohibition contained in the state law. We are of the view, therefore, that the ordinance and the statute may coexist in harmony. City of Maryville v. Wood, supra;

State ex rel. Hewlett v. Womach, supra; Vest v. Kansas City, supra; Brotherhood of Stationary Engineers v. City of St. Louis, Mo.App., 212 S.W.2d 454, 459.

Does the ordinance violate the due process clause of the Missouri Constitution? We should be justified in ignoring that question for plaintiff has failed to point out wherein and how the ordinance violates due process. In any event, however, it is well established that "a statute or municipal ordinance which is fairly referable to the police power of the state or municipality, and which discloses upon its face, or which may be shown aliunde to have been enacted for the protection, and in furtherance of the peace, comfort, safety, health, morality, and general welfare of the inhabitants of the state or municipality, does not contravene or infringe due process." Graff v. Priest, 356 Mo. 401, 409, 201 S.W.2d 945, 951 [1–4]; Bellerive Investment Co. v. Kansas City, 321 Mo. 969, 981, 13 S.W.2d 628, 634. Subsection (c) of the ordinance apparently tends to cause only financially responsible persons to remain in the retail liquor business. We may not say that an ordinance which tends to require financially responsible persons to remain in the retail liquor business is not a reasonable regulation, fairly referable to the municipal police power. "The propriety, wisdom, and expediency of legislation enacted in pursuance of the police power is exclusively a matter for the Legislature." Star Square Auto Supply Co. v. Gerk, 325 Mo. 968, 997, 30 S.W.2d 447, 462 [14–16]. "From its very nature the police power is a power to be exercised within wide limits of legislative discretion and if a statute appears to be within the apparent scope of this power the courts will not inquire into its wisdom and policy, or undertake to substitute their discretion for that of the legislature." Poole & Creber Market Co. v. Breshears, 343 Mo. 1133, 1142, 125 S.W.2d 23, 27 [1–5]. "The exercise of its police power by the state or the city can only be declared improper or invalid when rules and regulations imposed thereunder

can be said to be unreasonable." State ex rel. Vogt v. Reynolds, 295 Mo. 375, 393, 244 S.W. 929, 934. Further, the burden to show the unreasonableness of the regulation of the ordinance in question was upon the one asserting the ordinance's invalidity. Bellerive Investment Co. v. Kansas City, supra, 13 S.W.2d 639 [17, 18]; Nickols v. North Kansas City, 358 Mo. 402, 408, 214 S.W.2d 710, 712 [5, 6]. Plaintiff has failed to discharge that burden and the legal presumption of validity which attends the ordinance remains. Kansas City v. Liebi, 298 Mo. 569, 591, 252 S.W. 404, 407 [1, 2], 28 A.L.R. 295.

Plaintiff's contention that the ordinance violates Article I, Section 13, of the Constitution (providing in part that no law impairing the obligation of contracts or retrospective in its operation can be enacted), is without merit. Plaintiff has not developed his stated point that the ordinance impairs the obligation of a contract. His contention that the ordinance is retrospective in operation is that it "attempts to place a different construction on transactions which had already occurred prior to the effective date of the Ordinance." That contention is not developed beyond that statement and we are not sure that we understand it. We are unable, however, to see wherein the ordinance is retrospective in its operation. It prohibits future sales (after the effective date of the ordinance) by wholesalers to specified retailers. It does not change or purport to change the legal effect of any prior transaction.

We perhaps should add, because of certain statements in plaintiff's brief, that the fact that the enforcement of the ordinance may cause pecuniary loss to plaintiff and other Kansas City liquor retailers does not tend to make the ordinance unconstitutional or otherwise invalid, Graff v. Priest, supra, 201 S.W.2d 951 [1–4]; and, whether the ordinance makes Kansas City's director of liquor control a collector for wholesalers, or whether the ordinance was sponsored and lobbied to passage by the wholesalers, or what construction the director of liquor

control may put upon the ordinance and what policies he may pursue in enforcing it, are not proper questions for our present consideration.

The trial court's judgment is reversed and the injunction enjoining and restraining defendants from enforcing "paragraphs (b), (c) and (e) of Chapter 25, Subsection 15, of the Revised Ordinances of Kansas City, Missouri, as amended" is dissolved.

VAN OSDOL and HOLMAN, CC., concurs.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.