John Bardenheier Wine & Liquor Co., a Corporation; Conrad, Inc., a Corporation; Dexheimer-Becker & Co. a Corporation; Peter Hauptmann Tobacco Co., Doing Business as Peter Hauptmann Co., a Corporation; Louis Hilfer Co., a Corporation; Import Distributing Co., a Corporation; Irving Liquor Distributing Co., a Corporation; Meyer Brothers Drug Co., a Corporation; McKesson-Robbins, Inc., a Corporation; Paramount Liquor Co., a Corporation; Park & Tilford Import Corp. of Mo., a Corporation; Dr. Pepper Bottling Co. of St. Louis, a Corporation; St. Louis Crystal Water & Soda Co., a Corporation; St. Louis Wholesale Drug Co., Doing Business as St. Louis Wholesale Liquor Co., a Corporation; Security Warehouse Co., Inc., a Corporation; J. Simon & Sons, Inc., a Corporation; Simpson & Barker, Inc., a Corporation; Triangle Wine & Liquor Co., a Corporation; Waldorf Corp., a Corporation, and Mississippi Valley Liquor Co., a Corporation, Appellants, v. City of St. Louis, a Municipal Corporation; Bernard F. Dickmann, Mayor of the City of St. Louis; Edgar H. Wayman, City Counselor, City of St. Louis; Lawrence McDaniel, Excise Commissioner of the City of St. Louis and George W. Chadsey, Director of the Department of Public Safety.—135 S. W. (2d) 345.

Court en Banc, January 9, 1940.

638

*Fred M. Switzer, Jr.,* for appellants.

*Edgar H. Wayman, Oliver Senti* and *Andrew J. Reis* for respondents.

*Nagel, Kirby, Orrick & Shepley* for Missouri Brewers Association, *amicus curiae.*

640

LEEDY, J.— █   Suit for a declaratory judgment, filed by certain wholesale liquor dealers of the City of St. Louis, wherein they seek to have Section 10-A of the liquor control ordinance of said city adjudged invalid. The section in controversy purports to impose a gallonage tax on spirituous liquors and wines, in addition to the flat annual license tax or charge provided by Section 10 of said ordinance. The cause was tried upon an agreed statement of facts, resulting in a decree upholding the validity of the ordinance, and plaintiffs appealed. The constitutionality of said section, under both Federal and State Constitutions, is embraced within the issues of law tendered; hence, this court is vested with jurisdiction.

█   We examine first the assignment that the section of the ordinance mentioned is invalid because in conflict with the' provisions of the State Liquor Control Act, and particularly Sections 21 and 25 thereof. The rule that municipal ordinances regulating subjects, matters and things upon which there is a general law of the State, must be in harmony with the State law (Sec. 7289, R. S. 1929, sec. 7289, Mo. Stat. Ann., p. 5874; Ex parte Tarling (Mo.), 241 S. W. 929) is not controverted by respondents. On the other hand, they assert that the power and authority of the city to impose a gallonage tax is specifically conferred by the State act. And to sustain that position, they invoke the very sections of the State statute upon which appellants rely to overturn the ordinance, so that, as thus sharply defined, the issue on this phase of the case is reduced to one of mere statutory interpretation.

█   The Twenty-first Amendment to the Constitution of the United States, adopted in 1933, effected the repeal of the Eighteenth or Natural Prohibition Amendment, following which the Fifty-seventh General Assembly of Missouri, at an extra session convened October 17, 1933, enacted a comprehensive scheme for the regulation and control of the manufacture, sale, possession, transportation and distribution of intoxicating liquor, known and designated as the "Liquor Control Act." [Laws Mo., Ex. Sess. 1933-34, pp. 77-95.] The act has been amended at each subsequent session of the Legislature. [Laws, 1935, pp. 267-285; Laws, 1937, pp. 527-534; Laws, 1939, pp. 817-824.]

.Section 21 of said act, as amended by Laws, 1937, page 529, pro-

vides: "No person, partnership, association (etc.,) . . . shall manufacture, distill, blend, sell or offer for sale intoxicating liquor within this state . . . without procuring a license from the Supervisor of Liquor Control authorizing them to do so. *For such license there shall be paid* to and collected by the Supervisor of Liquor Control *annual charges* as follows: . . . for the privilege of selling intoxicating liquor of all kinds by a wholesaler to a person duly licensed to sell such intoxicating liquor at retail the sum of two hundred fifty ($250.00) dollars." (Italics ours.) Section 10 of the ordinance fixes the annual license for such privilege. at the sum of six hundred twenty-five dollars ($625.00). This rate is concededly the maximum that might have been exacted by the city for a *flat annual license* under Section 25 of the State act.

Section 21-a-1, insofar as here relevant, provides:

"In addition to all other licenses and charges, there shall be paid to and collected by the Supervisor of Liquor Control charges as follows:

"(a) For the privilege of selling in the State of Missouri spirituous liquors, including brandy, rum, whiskey, and gin, and other spirituous liquors and alcohol for beverage purposes, there shall be paid, and the Supervisor of Liquor Control shall be entitled to receive, the sum of eighty cents ($.80) per gallon or fraction thereof.

"(b) For the privilege of selling light wines, as herein defined, the sum of two cents ($.02) per gallon; and for the privilege of selling fortified wines, as herein defined, the sum of ten cents ($.10) per gallon. The term 'light wines' as herein used, means any fermented wine containing not to exceed fourteen per centum (14%) of alcohol by weight. The term 'fortified wines,' as herein used, means all other wines, containing in excess of fourteen per centum (14%) of alcohol by weight.

"(c) The amounts required to be paid by this section shall be evidenced by stamps or labels purchased from the Supervisor of Liquor Control and affixed to the container of such spirituous liquor. The person who shall first sell such liquor in this state shall be liable for such payment and shall purchase, affix and cancel the stamps or labels required to be affixed to such container. . . .

"(f) Every manufacturer, distiller and wholesale dealer in this state, shall, before shipping, delivering or sending out any of the liquors mentioned in subsection (a) of this section, to any person in this state, cause the same to have the requisite denominations and amount of stamps or labels required by this section affixed as stated herein, and cause the same to be cancelled, and shall, at the time of shipping or delivering such liquors, make a true duplicate invoice of the same, showing the date, amount and value of each class of such liquors shipped or delivered, and retain a duplicate thereof,

subject to the use and inspection of the Supervisor of Liquor Control and his representatives for two (2) years.

"(g)  Any person who shall sell in this state any intoxicating liquor *without first having procured a license* from the Supervisor of Liquor Control, *authorizing him to sell such intoxicating liquor* shall be deemed guilty of a felony and upon conviction shall be punished by imprisonment in the penitentiary for a term of not less than two years nor more than five years, or by imprisonment in the county jail, for a term of not less than three months nor more than one year, or by a fine of not less than one hundred ($100.00) dollars nor more than one thousand ($1,000.00) dollars, or by both such fine and imprisonment."  [Laws, 1937, pp. 531, 532, 533.]

Section 25 reads as follows:

"In addition to the permit fees and license fees and inspection fees by this act required to be paid into the state treasury, every holder of a permit or license authorized by this act shall pay into the county treasury of the county wherein the premises described and covered by such permit or license are located, or in case such premises are located in the City of St. Louis, to the collector of revenue of said city, *a fee* in such sum (not in excess of the amount by this act required to be paid into the state treasury for *such state permit or license*) as the county court, or the corresponding authority in the City of St. Louis, as the case may be, shall by order of record determine, and shall pay into the treasury of the municipal corporation, wherein said premises are located, *a license fee* in such sum (not exceeding one and one-half times the amount by this act required to be paid into the state treasury for *such state permit or license*), as the law-making body of such municipality, including the City of St. Louis may by ordinance determine.

"The Board of Aldermen, City Council or other proper authorities of incorporated cities, may charge for *licenses* issued to manufacturers, distillers, brewers, wholesalers and retailers of all intoxicating liquor, located within their limits, fix the amount to be charged for *such license,* subject to the limitations of this act, and provide for the collection thereof, make and enforce ordinances for the regulation and control of the sale of all intoxicating liquors within their limits, provide for penalties for the violation of such ordinances, where not inconsistent with the provisions of this act."  (Italics ours.)  [Laws, 1935, pp. 276, 277.]

Pursuant to the grant of authority conferred under Section 25 of the 1933 act (since repealed and re-enacted as amended, Laws 1935, p. 267,) the Board of Aldermen of the City of St. Louis enacted Ordinance No. 40274, which was approved March 23, 1934, establishing an Excise Division in the Department of Public Safety, and providing for municipal regulation and control of intoxicating liquor. Section 10 of said ordinance imposed a flat annual license fee upon

wholesalers (among others) of alcoholic beverages. There was no provision for a gallonage tax, or charge based upon the volume of business done, such as provided by the present Section 10-A, here under attack, which was first adopted August 9, 1935. It is unnecessary to detail the provisions of the several ordinances by which said liquor control ordinance was, from time to time, amended. There were four such ordinances, numbered and approved, respectively, as follows: No. 40630, August 9, 1935; No. 40744, January 21, 1936; No. 41215, December 21, 1937, and No. 41277, March 23, 1938.

Section 10 of the ordinance follows substantially the provisions of Section 21 of the State act, and imposes (within the limitations prescribed in Sec. 25 of the State act) flat annual charges upon the several classes of licenses therein provided. Section 10-A, the one in controversy, reads as follows:

"In addition to the license charges prescribed in the preceding section there shall be paid to, and collected by, the Excise Commissioner of the City of St. Louis, charges as follows: (a) for the privilege of selling, in the City of St. Louis, spirituous liquors, including brandy, rum, whiskey and gin, and other spirituous liquors and alcohol for beverage purposes, the sum of eighty cents (80c) per gallon or fraction thereof; (b) for the privilege of selling light wines as herein defined, the sum of two cents (2c) per gallon; and for the privilege of selling fortified wines as herein defined, the sum of ten cents (10c) per gallon; the term 'light wines,' as herein used, means any fermented wine containing not to exceed fourteen per centum (14%) of alcohol by weight; the term 'fortified wines' as herein used, means all other wines containing in excess of fourteen per centum (14%) of alcohol by weight; (c) the amount required by this section to be paid shall be evidenced by stamps or labels purchased from the Excise Commissioner, and affixed to the container of the intoxicating liquors mentioned in this section; the person who shall first sell such intoxicating liquor to any other person, firm or corporation in the City of St. Louis shall be liable for such payment, and shall purchase, affix and cancel the stamps or labels required to be affixed to such containers; provided, however, that any applicant for a license to manufacture, distill, rectify or blend and/or sell any of the intoxicating liquors mentioned in subsection (a) of this section for resale by any other person may, if the applicant so elects, at the time of applying for such license, pay to the Excise Commissioner the sum of Eight Hundred Seventy-five Dollars ($875.00) in lieu of the gallonage license charges prescribed by this section, and provided further that any applicant for a license to manufacture, distill, rectify and blend and/or sell light or fortified wines, as defined in subsection (d) of this section for resale by any other person may, if the applicant so elects, at the time of applying for such license, pay to the Excise Commissioner the sum of Two Hundred Fifty Dollars ($250.00) in

lieu of the gallonage license charges presented by this section, and every licensee who so elects and pays shall thereby be relieved of liability for failure to purchase, affix and cancel the stamps mentioned in this section; (d) it shall be unlawful for any person to remove the contents of any container containing any of the intoxicating liquors mentioned in this section without destroying such container, or to refill any such container, in whole or in part with any of the intoxicating liquors mentioned in this section; (e) every manufacturer, distiller, and wholesale dealer in the City of St. Louis shall, before shipping, delivering, or sending out any of the intoxicating liquors mentioned in this section to any person in the City of St. Louis, cause the same to have the requisite denominations and amount of stamps or labels required by this section to be affixed as stated herein, and cause the same to be cancelled, except as otherwise provided in section Ten-A (c) hereof.'' (Note: Section 10-A was subsequently, on March 23, 1938, amended, but in respects not here material—Ordinance No. 41215.)

As summarized in their brief, respondents' position is stated as follows: ''That the liquor control act does grant to both counties and municipalities the power to impose, within prescribed limits, the same kind of fees as the State exacts for its 'permit or license.' '' Are the charges imposed by Section 21-a-1 ''those exacted by the state for its 'permit or license?' '' Upon a consideration of the act as a whole, we are constrained to answer that question in the negative. Briefly noticing some of its provisions touching the matter of licenses, it will be seen that Section 12 provides that ''the Supervisor of Liquor Control shall have the authority to issue licenses mentioned in this act.'' Section 18 makes it unlawful to manufacture or sell, or expose for sale. ''without taking out a license.'' Section 20 says, ''Every license issued . . . shall particularly describe the premises at which intoxicating liquor may be sold thereunder.'' And Section 22 provides, ''No license shall be issued until the sum prescribed by this act *for such license* shall be paid to the State Treasurer, etc.''

Section 22-a provides as follows: ''Every person, persons or corporation who shall manufacture or distill spirituous liquors, including brandy, rum, whiskey, and gin, and other spirituous liquors, within this state, and wholesale or retail dealers or any other person who shall import such intoxicating liquors into this state, for the purpose of sale or offering the same for sale in this state, shall, before offering the same for sale, cause the same to be inspected, labelled and gauged by the Supervisor of Liquor Control. It shall be the duty of the Supervisor of Liquor Control to inspect, label and gauge such character of intoxicating liquor referred to in this section and to collect the fees therefor provided by this act.''

By another section, 35, the State Treasurer is required ''to provide suitable and inimitable state certificates and labels for this inspection,

gauging and labeling." We are of the opinion that the charges prescribed by Section 21-a-1 are those referred to in Section 22-a, and so are in the nature of inspection fees, and not license fees, which are fixed by other sections. The section (25) limiting the charges counties and municipalities may impose, requires every holder of a state permit or license to pay, "In addition to the permit fees and license fees and *inspection fees* by this act required to be paid into the state treasury . . . *a fee* in such sum (not in excess of the amount by this act required to be paid into the state treasury for such *state permit or license*) as the county court, or the corresponding authority in the City of St. Louis, as the case may be, shall by order of record determine" and "*a license fee* in such sum (not exceeding one and one-half times the amount by this act required to be paid into the state treasury for such *state permit or license*) as the law-making body of such municipality, including the City of St. Louis, may by ordinance determine." It seems clear that the authority of the city under the foregoing section was exhausted by the enactment of Section 10 of the ordinance which imposed a charge of two and one-half times the amount required to be paid into the State treasury for a State permit or license; and, therefore, the provisions of Section 10-A setting up a gallonage tax must fall, as invalid. The judgment is, accordingly, reversed, and the cause remanded with directions to enter judgment for the plaintiffs in conformity with the views herein expressed.

All concur.