STATE of Missouri, ex rel. CASEY'S GENERAL STORES, INC., an Iowa Corporation, Casey's Marketing Company, an Iowa Corporation, and Donita Generous, Plaintiffs–Respondents/ Cross–Appellants,

v.

CITY OF WEST PLAINS, Missouri, Gene Jones, Lou Citro, James Goss, Robert Jackson, and Ray Gobel, Defendants–Appellants/ Cross–Respondents.

Nos. 22457, 22459.

Missouri Court of Appeals, Southern District, Division Two.

Dec. 30, 1999.

Motion for Rehearing or Transfer Denied Jan. 21, 2000.

Application for Transfer Denied Feb. 22, 2000.

---

4. *See Murphy v. State*, 873 S.W.2d 231, 232 (Mo. banc 1994); *State ex rel. Jones v. Cook-*

*sey*, 830 S.W.2d 421, 424–25 (Mo. banc 1992).

Robert Z. Oberzalek, Cantrell & Oberzalek, Eminence, for Appellants/Cross–Respondents.

Charles E. Smarr and Mark G. Anderson, Brydon, Swearengen & England P.C., Jefferson City, for Respondents/Cross–Appellants.

PHILLIP R. GARRISON, Chief Judge.

This case is part of the continuing saga surrounding the efforts of Casey's General Stores, Inc. ("Casey's") to sell intoxicating liquor in the City of West Plains ("West Plains" or "the City") closer to a church than permitted under the City's ordinances. Involved is the collision of competing theories concerning the regulation of the sale of intoxicating liquors in an incorporated city. Casey's contends that since it obtained a "resort" liquor license from the State of Missouri, its intoxicating liquor sales cannot be regulated by West Plains, and therefore it cannot be required to obtain a license from West Plains. West Plains, on the other hand, contends that it is entitled to regulate the sale of intoxicating liquor within its corporate limits, and accordingly is entitled to deny a license to Casey's to sell intoxicating liquor at a location within three hundred feet of a church.

In an earlier case, Casey's sought to require the City to issue a license to sell original package beer and wine at a store it constructed in West Plains at 816 St. Louis Street. We held that the City was not required to issue the license since § 311.080.2[1] authorizes an incorporated city to prohibit the granting of a license for the sale of intoxicating liquor within three hundred feet of any school, church or other building regularly used as a place of religious worship. The City had an ordinance prohibiting the granting of a license for the sale of intoxicating liquor within three hundred feet of such places, and Casey's property was located within three hundred feet of a church. *State ex rel. Casey's General Stores, Inc. v. Kissinger,* 926 S.W.2d 191 (Mo.App. S.D.1996).

This appeal concerns Casey's subsequent efforts to obtain authority to sell intoxicating liquor on the same property. After *Kissinger* was decided, Casey's applied for and obtained a retail liquor by the drink "resort" license from the Supervisor of the Missouri Division of Liquor Control (the "Supervisor" or the "Division") pursuant to § 311.095. Casey's then began making package beer sales on the property,[2]

---

1. All references to statutes are to RSMo 1994 unless otherwise indicated.

2. According to § 311.200.4 a license for the sale of intoxicating liquor at retail by the

but the City charged one of Casey's employees with a violation of a section of its ordinances prohibiting the sale of intoxicating liquor without first obtaining a liquor license from the City. The municipal judge found that the employee had violated the ordinance and ordered her to apply to the City for a license to sell intoxicating liquor.

Casey's submitted an application to the City for a liquor license. In response, the City notified Casey's that the city council unanimously denied that license because of the proximity of the store to a church. Casey's then filed a petition in circuit court seeking a writ of mandamus to require the City to issue a license to it. The circuit court found that while the City could require that a city license be obtained in addition to the state "resort" license, the City could not refuse to issue such a license after the Division had issued a "resort" license for the property in question, and it ordered the City to issue a license to Casey's.[3]

Casey's appeal the portion of the judgment holding that the City may require a license in addition to the "resort" license issued by the Division. We affirm that portion of the judgment. The City also appeals, challenging the portion of the judgment ordering that it issue a city license to Casey's. We reverse that portion of the judgment.

■■■ Mandamus lies only when there is an unequivocal showing that a public official failed to perform a ministerial duty imposed by law. *Bergman v. Mills*, 988 S.W.2d 84, 88 (Mo.App. W.D.1999). To be entitled to relief, there must be a showing that the applicant has a clear, unequivocal, specific and positive right to have per-

formed the act demanded. *Id.* The standard for our review is under an abuse of discretion standard pursuant to which we will reverse the trial court's ruling only when it is "so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.*

■■■ A review of the competing statutes and ordinances is required for an understanding of the issues in this case. Section 311.220.2 provides:

The board of aldermen, city council or other proper authorities of incorporated cities, may charge for licenses issued to manufacturers, distillers, brewers, wholesalers and retailers of all intoxicating liquor, located within their limits, fix the amount to be charged for such license, subject to the limitations of this law, and provide for the collection thereof, make and enforce ordinances for the regulation and control of the sale of all intoxicating liquors within their limits, provide for penalties for the violation of such ordinances, where not inconsistent with the provisions of this law.

The City's Ordinance 4–28 provides:

No person shall sell or expose for sale, either at wholesale or retail in the city, intoxicating liquor in any quantity without first obtaining a liquor license from the city, except as otherwise provided in this division.

Section 311.080 provides, in pertinent part:

1. No license shall be granted for the sale of intoxicating liquor ... within one hundred feet of any school, church or other building regularly used as a place of religious worship, unless the applicant for the license shall first obtain the consent in writing of the board of directors of the school, or the consent in writing

drink for consumption on premise includes the sale of intoxicating liquor in the original package.

3. Also included in the circuit court's findings of fact and conclusions of law was the finding that no part of Casey's store building or real estate was within one hundred feet of any part of the real property or buildings of the

church. This apparently was responsive to § 311.080.1 providing that no license shall be granted for the sale of intoxicating liquor within one hundred feet of any school, church or other building regularly used as a place of religious worship unless certain conditions, not here applicable, are met.

of the majority of the managing board of the church or place of worship....

2. The board of aldermen, city council or other proper authorities, of any incorporated city, town or village, may by ordinance, prohibit the granting of a license for the sale of intoxicating liquor within a distance as great as three hundred feet....

The City's Ordinance 4–34 states:

No liquor license shall be granted for the sale of intoxicating liquor within three hundred (300) feet of any school, church or other building regularly used as a place of worship or a public playground.

Section 311.095.1, under which Casey's was issued the "resort" license by the Division, provides in pertinent part:

1. Notwithstanding any other provisions of this chapter to the contrary, any person who possesses the qualifications required by this chapter, and who now or hereafter meets the requirements of and complies with the provisions of this chapter, may apply for, and the supervisor of liquor control may issue, a license to sell intoxicating liquor, ... by the drink at retail for consumption on the premises of any resort as described in the application.[4]

3. The times for opening and closing the establishments as fixed in section 311.290, the authority for the collection of fees by counties as provided in section 311.220, and all other laws and regulations of the state relating to the sale of liquor by the drink for consumption on the premises where sold shall apply to resorts in the same manner as they apply to establishments licensed under section 311.090.

Ordinance 4–32.1 entitled "Sale of intoxicating liquor by the drink at retail on the premises of resort establishments" states:

(b) *Application for city license.* Any place that has heretofore or may hereafter be licensed by the state supervisor of liquor control to sell intoxicating liquors by the drink at retail on the premises of such establishments, shall immediately after obtaining such state license, apply to the city clerk of the city a license to sell intoxicating liquors by the drink at retail on the premises of such establishments.

In its appeal, Casey's contends that the trial court erred in holding that the City may require Casey's to obtain a city license in addition to the state "resort" license. It argues that "Section 311.095 does not authorize cities to regulate the holder of a 'resort' license issued by the state ..." Its theory is that because § 311.095.1 provides that "[n]otwithstanding any other provisions of this chapter to the contrary," it supercedes contrary licensing provisions of Chapter 311 and the Division may issue a resort license to sell intoxicating liquor by the drink at retail for consumption on the premises to persons possessing the qualifications required by that chapter.

In interpreting statutes, the fundamental objective is to ascertain the intent of the legislature from the language of the statute and, if possible, give effect to that intent. *In re Estate of Ayers,* 984 S.W.2d 193, 200 (Mo.App. S.D.1998). "It is a basic rule of statutory construction that words should be given their plain and ordinary meaning whenever possible." *Spradlin v. City of Fulton,* 982 S.W.2d 255, 258 (Mo.banc 1998). "Courts look elsewhere for interpretation only when the meaning is ambiguous or would lead to an illogical result defeating the purpose of the legislature." *Id.* In determining the legislature's intent, the provisions of the entire act must be construed together, and if reasonably possible, all the provisions must be harmonized. *Parkville Benefit*

---

4. No issue is raised on this appeal about whether Casey's qualifies as a "resort" under § 311.095 or whether the Supervisor of the Division was authorized to issue a "resort" license to it.

*Assessment v. Platte County,* 906 S.W.2d 766, 769 (Mo.App. W.D.1995).

■ The word "notwithstanding" is defined as "in spite of." *Parkville,* 906 S.W.2d at 769 (citing WEBSTER'S NEW WORLD DICTIONARY, 2d ed.1986). Accordingly, § 311.095.1 begins with a phrase meaning that it is in spite of any other provisions of Chapter 311 to the contrary. The term "notwithstanding," however, does not necessarily mean that it is to the complete exclusion of all other statutory provisions. *See Parkville,* 906 S.W.2d at 769.

■ A section of a statute should not be read in isolation from the context of the whole act. *State v. Meggs,* 950 S.W.2d 608, 610 (Mo.App. S.D.1997). Accordingly, we note the first sentence of § 311.095.1 contains not only the "[n]otwithstanding" provision, but also provides that any person who possesses the qualifications required by that chapter, "and who now or hereafter meets the requirements of and complies with the provisions of this chapter" may apply for and be granted a license to sell intoxicating liquor by the drink at retail for consumption on the premises of a resort described in the application. Therefore, in the same sentence, the statute says that its provisions are "[n]otwithstanding" or "in spite of" the other provisions of Chapter 311, but it also provides that an applicant must meet the requirements of and comply with the provisions of that chapter. A statute which can be read differently by reasonably well-informed persons is ambiguous. *Meggs,* 950 S.W.2d at 610.

■ Courts look beyond the plain and ordinary meaning of a statute when its meaning is ambiguous. *Meggs,* 950 S.W.2d at 611. The ultimate guide is the intent of the legislature. *Id.* In ascertaining that, it is appropriate for us to consider the statute's history, surrounding circumstances, and examine the problem in society to which the legislation was addressed. *Id.*

■ Chapter 311 is entitled the "Liquor Control Law," § 311.010, and is a comprehensive scheme for the regulation and control of the manufacture, sale, possession, transportation and distribution of intoxicating liquor. *John Bardenheier Wine & Liquor Co. v. City of St. Louis,* 345 Mo. 637, 135 S.W.2d 345, 346 (1939). A municipal corporation's powers regarding the control and regulation of intoxicating liquor are derived from and subject to the Liquor Control Act. *State ex rel. Payton v. City of Riverside,* 640 S.W.2d 137, 140 (Mo.App. W.D.1982). In this regard, we note that the traffic of liquor is not a lawful business except as authorized by express legislation, and no person has the natural or inherent right to engage in it. *State ex rel. Missouri Baptist Hosp. v. Nangle,* 230 S.W.2d 128, 131 (Mo.App.St.L. 1950). The authority to license and regulate the sale of intoxicating liquor is for the purpose of preserving the public peace, good order and security against dangers arising from the traffic of such liquors. *State ex rel. Hewlett v. Womach,* 355 Mo. 486, 196 S.W.2d 809, 815 (1946).

The essence of Casey's contention is that by the words "[n]otwithstanding any other provisions of this chapter to the contrary" in § 311.095.1 relating to "resort" licenses, the legislature has created an exception to the provisions in § 311.220.2 which authorizes incorporated cities to charge for licenses issued to retailers of intoxicating liquor within its limits. Additionally, Casey's points to the fact that § 311.095.3 refers to the collection of fees only by counties, with no reference to a similar authority by cities. It reasons that this must mean that cities are not authorized to issue licenses, collect fees, or otherwise regulate with reference to "resort" licenses issued by the Division. It characterizes this as a clear indication that the legislature did not intend, and indeed did not authorize, cities to have any authority over the sale of intoxicating beverages under the "resort" license.

A review of the history of § 311.095 is helpful in understanding its provisions. As Casey's states in its brief with reference to § 311.095:

> As originally enacted, the statute provided that a "resort," as that term was defined, was limited to "establishments being located in a *county* bordering on a lake having at least two hundred fifty miles of shoreline, ..." Thus, it seems clear that, as originally enacted, the resort license provided for in section 311.095 was intended to apply to establishments in the counties surrounding the Lake of the Ozarks.

When § 311.095 was first enacted in 1967, the version of § 311.090 then in effect authorized the issuance of a "general" state liquor by the drink license only in incorporated cities, and specifically provided that no such license could be issued outside the limits of such cities. This, together with the fact that the version of § 311.095 enacted that year provided only for a "resort" license in a "county bordering on a lake having at least two hundred fifty miles of shoreline (explained by Casey's to be Lake of the Ozarks), helps explain why the authority to collect fees by "counties" as provided in § 311.220 would have been specifically referred to in § 311.095.2, and cities would not have been mentioned in the same provision.

A similar review of §§ 311.090 and .095 also explains the insertion of the "[n]othwithstanding" phrase in § 311.095. Since § 311.090.1 made it clear that the "general" liquor by the drink license authorized by that statute was available only in an incorporated city, and not in areas of counties outside the limits of such cities when § 311.095 was enacted, it is understandable that if the legislature wanted to authorize liquor by the drink for resorts in unincorporated areas of counties, it was necessary to provide in § 311.095 that its provisions were "[n]othwithstanding any other provisions of this chapter to the contrary." If it had not done so, the two provisions would have been in direct conflict.

The same reasoning is also responsive to Casey's argument concerning that part of § 311.090.1 (the statute authorizing "general" retail liquor by the drink licenses) which specifically requires the applicant to comply with "the provisions of this chapter, and the ordinances, rules and regulations of the incorporated city in which such licensee proposes to operate his business." It urges that this part of the statute is further authority that the legislature did not intend for an applicant for a "resort" license under § 311.095 to be required to satisfy any of the ordinances, rules and regulations of a city as a condition of a license since that statute does not contain similar language. Since that version of § 311.090 applied only in incorporated cities, it is understandable why the legislature would specifically require compliance with their ordinances and regulations, and would not do the same in § 311.095, which was originally enacted to apply only in counties.

Section 311.095 has been amended several times since its original enactment, including the amendment in 1974 which eliminated the reference to establishments in a county bordering a lake having at least two hundred fifty miles of shoreline, but the reference to "collection of fees by counties as provided in section 311.220" has remained unchanged. We cannot agree with Casey's conclusion that this indicates a legislative decision to deprive cities of the ability to provide regulation of the sale of intoxicating liquor in their boundaries with reference to "resort" licenses issued by the state. If that were the legislature's intention, it would have necessarily determined that, the authority granted to a city to prohibit by ordinance the issuance of a license for the sale of intoxicating liquor within as great a distance as three hundred feet from schools and churches would be applicable to all licenses for the sale of intoxicating liquor issued pursuant to § 311.090, but not with

reference to "resort" licenses issued by the Division. Likewise, if that was the legislative intention it would mean that it intended to permit a city to license and regulate the sale of all intoxicating liquor within its boundaries except those sold pursuant to a state "resort" license. We find nothing in Chapter 311 that would support Casey's theory in this regard. Supporting this conclusion is the fact that § 311.095.3 provides, in part, that "all other laws and regulations of the state relating to the sale of liquor by the drink for consumption on the premises where sold shall apply to resorts in the same manner as they apply to establishments licensed under section 311.090."

Casey's also points to the fact that § 311.220.2 authorizes incorporated cities to charge for licenses issued to retailers of all intoxicating liquor; fix the amounts to be charged for the licenses, subject to the limitations of "this law"; make and enforce ordinances for the regulation and control of the sale of all intoxicating liquors within its limits; and provide for penalties for the violation of such ordinances "where not inconsistent with the provisions of this law." Casey's argues that since such authority is granted only where not inconsistent with the provisions of Chapter 311, and since § 311.095 authorizes a state "resort" license "[n]otwithstanding any other provisions" of Chapter 311 to the contrary, it is clear that the legislature intended that no city license be required. The authority to license *all* retailers of intoxicating liquor within its limits, however, has not been repealed. As indicated, we are not persuaded that the intent of the legislature in enacting § 311.095 with its "[n]otwithstanding" language was intended to supercede the all-encompassing authority to license provided in § 311.220. Certainly, we are unable to discern anything from the history of § 311.095, the circumstances surrounding its enactment, or the societal problem to which Chapter 311 is addressed, which leads us to the conclusion that it was intended to deprive an incorporated city of the specific authority granted in § 311.220 to license the sale of intoxicating liquors in situations where the state had issued a "resort" license. This conclusion is not changed by the fact that § 311.220.2 contains the qualifier "where not inconsistent with the provisions of this law" because we do not find it inconsistent with § 311.095.

Fortifying this conclusion is the fact that § 311.095.1, although stating that it is "[n]othwithstanding any other provisions of this chapter to the contrary," also provides in the same sentence a person to whom a "resort" license may be issued is to be a person who "meets the requirements of and complies with the provisions of this chapter." This "chapter" includes the provisions of § 311.220.2 authorizing an incorporated city to license *all* sales of intoxicating liquor within its limits.

■ We also note another principle of statutory construction. A specific statute prevails over a general one. *State ex rel. Fort Zumwalt v. Dickherber,* 576 S.W.2d 532, 536 (Mo.banc 1979). As said in *Madden v. Ellspermann,* 813 S.W.2d 51, 53 (Mo.App. W.D.1991), "[w]hen there is a conflict between two statutes, one of which deals with a subject in a general way and the second treats a part of the same subject in a more detailed way, the specific statute will govern." In the instant case, the provisions of § 311.220.2 specifically authorize a city to license *all* sales of intoxicating liquor within its limits, and to enforce ordinances for the regulation and control of the sale of such intoxicants. These provisions are specific and govern over the general "[n]othwithstanding" provision of § 311.095.1, even if the legislature's intention in including it in § 311.095 was as argued by Casey's.

■ Casey's cites *Allstate Distributors, Inc. v. Norfleet,* 750 S.W.2d 73, 76 (Mo.banc 1988) as direct authority for its position in this case. There, the issue was whether the legislature intended to preempt to the state the taxation of liquor by adopting Chapter 311 after the repeal

of prohibition. In holding that the state did preempt that field and that a city could only charge a fee for a license as provided in § 311.220, the Court made the statement that:

"[e]ven such things as selling liquor at resorts and seasonal resorts (§ 311.095); selling liquor in stadiums (§§ 311.097, 311.273); selling liquor on boats or vessels (§ 311.091–.092); keeping bars open if New Year's Eve falls on Sunday (§ 311.298); serving liquor in restaurants on Sunday (§ 311.097); selling liquor on Sunday amusement places (§ 311.098); selling liquor on Sunday in places of entertainment (§ 311.102); and selling liquor on Sunday in 50 year old St. Louis dance-ballrooms (§ 311.093) require authorization by the state rather than by the municipality or the city.

We view this statement as unnecessary to the decision of the case. A judicial opinion should be read in light of the facts pertinent to that case, it being improper to give permanent and controlling effect to statements outside the scope of the real inquiry of the case. *State v. Miles Laboratories,* 365 Mo. 350, 282 S.W.2d 564, 573 (1955). Accordingly, we view that statement from *Allstate* as dictum and not controlling of our decision.

The trial court did not err in holding that the City was entitled to require Casey's to obtain a city license in addition to the state "resort" license issued by the Division. This point is denied.

■ The City appeals that portion of the judgment holding that, as a matter of law, it "cannot deny issuing a city liquor license since the state resort liquor license is already issued." In its single point relied on, the City contends that the issuance of a license by it is not required by § 311.095 because it is authorized to make and enforce ordinances for the regulation and control of the sale of intoxicating liquors within its city limits by, among other things, § 311.220, and additionally because § 311.080 not only authorizes its ordinance prohibiting a license to sell intoxicating liquor within three hundred feet of a church or school, but also prohibits a license of any kind which is in conflict with that ordinance.

As indicated earlier, § 311.080 provides that an incorporated city, town or village is authorized to prohibit, by ordinance, the granting of a license for the sale of intoxicating liquor within a distance as great as three hundred feet from a school, church or other building regularly used as a place of religious worship. That section specifically provides that if there is such an ordinance, "no license of any character shall issue in conflict with [it]". As indicated, West Plains has an ordinance prohibiting a liquor license for the sale of intoxicating liquor within three hundred feet of such buildings.

In *Kissinger,* 926 S.W.2d 191, we affirmed the trial court's finding that portions of 816 St. Louis Street in West Plains are less than three hundred feet from the Second Baptist Church. In doing so, we noted that the trial court also found that not only were portions of Casey's "property" at 816 St. Louis Street closer to the church than three hundred feet, but portions of the two buildings were also within that distance. In the instant case, the application for the "resort" license in question and the license itself indicate that authority for "retail liquor by the drink" was for the one story building at 816 St. Louis Street. It is, therefore, clear that at least a portion of the property authorized to contain retail liquor by the drink sales violates the three hundred feet requirement of the City's Ordinance.

Casey's does not challenge the existence of the City's Ordinance 4–34, prohibiting a liquor license within three hundred feet of a school, church or other building regularly used as a place of worship, which was enacted pursuant to § 311.080.2. Its theory, however, is that the City's Ordinance 4–34 and § 311.080.2 which provides that "[n]o license of any character shall issue in conflict with such an ordinance" are pre-

empted and superceded by the issuance of a "resort" license pursuant to § 311.095.1 by reason of its provision that it is "[n]otwithstanding any other provisions of this chapter to the contrary." For the same reasons specified earlier in this opinion concerning Casey's appeal, we do not interpret the "[n]otwithstanding" provision in § 311.095 in that manner.

Not only does § 311.080.2 specifically authorize an ordinance like the City's 4–34, which prohibits a license for the sale of intoxicating liquor within three hundred feet of a school, church, or other building regularly used as a place of worship, but § 311.220.2 authorizes the City to "make and enforce ordinances for the regulation and control of the sale of *all* intoxicating liquors within [its] limits." Granted, the latter provision is conditioned on not being "inconsistent with the provisions of this law." We do not, however, construe the provisions of the City's Ordinance 4–34 to be inconsistent with the provisions of Chapter 311, but rather find that it is consistent with it, and particularly § 311.080.2.

We said in *Kissinger*, 926 S.W.2d at 193 that cities may fix standards to be met before issuing a liquor license so long as the ordinance does not conflict with the state statute. In *Casey's General Stores, Inc. v. Downing*, 757 S.W.2d 1, 1–2 (Mo. App. S.D.1988), we held that a statute similar to § 311.220.2, which authorizes a city to make and enforce ordinances for the regulation and control of the sale of nonintoxicating beer within its limits which are not inconsistent with the provisions of that chapter, evidenced an intent by the legislature to give local communities a certain degree of home rule in regulating the sale of nonintoxicating beer within its borders as long as its regulatory ordinances do not conflict with state law.

Several Missouri cases have been decided holding that cities may enforce ordinances which regulates the exercise of privileges otherwise granted in a state liquor license. For instance, in *State ex rel.*

*Hewlett v. Womach*, 355 Mo. 486, 196 S.W.2d 809 (1946), the applicant had obtained a state license to sell package beer and sought to obtain a license from the city to do the same. The city denied the license on the basis that it had, by ordinance, limited the number of such licenses which could be granted and none were available. The court held that the city could regulate the sale of intoxicants in that manner and refused to order the city to grant the license. In doing so, the court noted that additional regulation to that of the state law does not constitute a conflict between the two. *Id.* at 815. Likewise, in *State ex rel. Kemerling v. Peterson*, 240 Mo.App. 700, 214 S.W.2d 739, 741 (K.C. 1948), it was held that a city can require a state licensee to obtain a city license for the sale of package liquor, citing the predecessor to § 311.220.2 (a city "may ... make and enforce ordinances for the regulation and control of the sale of all intoxicating liquors within their limits ... where not inconsistent with the provisions of this act"). It was explained that the prohibition against a city ordinance being in conflict or inconsistent with the statute means that the ordinance must not permit what the statute prohibits, nor prohibit what the statute permits. *Id.*

In the instant case, the City's ordinance prohibits the sale of intoxicating liquor within its boundaries in the absence of a city license, and also prohibits the issuance of a license for the sale of intoxicants within three hundred feet of a school, church or other place of worship. This is consistent with the provisions of §§ 311.080.2 and 311.220.2. There is no specific prohibitions of such regulatory requirements in § 311.095. Accordingly, we do not find the City's ordinances in question to be inconsistent with Chapter 311.

That portion of the judgment requiring the City to issue a license to Casey's for the sale of intoxicating liquor at the location identified in the state "resort" license and in their application to the City is re-

versed. Otherwise, the judgment is affirmed.

SHRUM, P.J., concurs.

BARNEY, J., concurs.