

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-25-00030-CR
No. 07-25-00031-CR
No. 07-25-00032-CR
No. 07-25-00033-CR
No. 07-25-00034-CR

**DAVID LEE WINFIELD, APPELLANT**

**V.**

**THE STATE OF TEXAS, APPELLEE**

On Appeal from the 47th District Court
Potter County, Texas
Trial Court Nos. 081652-A-CR, 081653-A-CR, 081654-A-CR, 081718-A-CR, 081651-A-CR
Honorable Dee Johnson, Presiding

January 21, 2026

MEMORANDUM OPINION

Before PARKER, C.J., and DOSS and YARBROUGH, JJ.

Following pleas of not guilty, Appellant, David Lee Winfield, was convicted by a jury of the five following offenses and sentenced as indicated:

| 07-25-00030-CR | Agg. assault by threat with a deadly weapon | Section 22.02(a)(2) | Two years |
|---|---|---|---|
| 07-25-00031-CR | Agg. assault by threat with a deadly weapon | Section 22.02(a)(2) | Two years |
| 07-25-00032-CR | Agg. assault by threat with a deadly weapon | Section 22.02(a)(2) | Two years |
| 07-25-00033-CR | Felony murder | Section 19.02(b)(3) | Forty years |
| 07-25-00034-CR | Agg. assault causing bodily injury | Section 22.02(a)(2) | Nine years |

The four convictions for aggravated assault all included an affirmative finding on use of a deadly weapon, to wit: a firearm. The sentences were ordered to run concurrently.

By three issues, Appellant challenges the denial of his motion to suppress because (1) he was interrogated without representation on October 7 regarding the felony murder charge which was based on deadly conduct, a lesser-included offense of aggravated assault with a deadly weapon; (2) the voluntariness of statements made on September 30 is doubtful given his mental capacity at the time and because his hospital confinement was tantamount to being in custody; and (3) the trial court failed to make mandatory findings on the voluntariness of his statements as required by article 38.22, section 6 of the Texas Code of Criminal Procedure. We affirm.

## BACKGROUND

At approximately 11:00 p.m. on September 5, 2021, Appellant randomly fired shots from his vehicle at three moving vehicles. An occupant of one of the vehicles was injured but the other two drivers were not. Around twenty-one hours later on September 6, he fired at two other vehicles killing the driver of one of the vehicles. A video of the suspected

vehicle used in the shooting was released to the public for help in identifying the shooter. Appellant's grandmother recognized the vehicle as one that could possibly be in her garage, and she called police. An investigation revealed the vehicle identified by the grandmother matched the vehicle suspected in the shootings. The vehicle's passenger side window was shattered from a bullet hole.

Appellant's grandmother told police Appellant was in the Covid ward at the hospital and they proceeded to interview him on September 30. Two sergeants went to interview him. They claimed Appellant was not in custody but was nevertheless read his constitutional rights, which he stated he understood and waived.[1] During the interview, Appellant implicated himself in the shootings and was later charged with three counts of aggravated assault by threat with a deadly weapon and one count of aggravated assault causing bodily injury with a deadly weapon. On that occasion, he was not questioned or charged with the death that resulted from one of the shootings. According to the sergeants, they did not yet have sufficient information to charge him with that offense.

The next day, October 1, Appellant was arraigned on the aggravated assault charges via Zoom, and he requested counsel. Counsel was not appointed on those charges until October 7. When he was released from the hospital, Appellant was transported to jail and on October 7, he was again interviewed by the sergeants but only regarding the shooting that resulted in a death. The sergeants informed Appellant they would not be questioning him on the assaultive offenses for which he had already been

---

[1] During the interview, Appellant believed he was in a "fake mental hospital."

3

charged.  The sergeants did not confirm whether Appellant had legal representation but again admonished him of his rights.  Appellant conveyed his understanding of those rights and willingly answered their questions.  He confessed to the killing and a week later, he was charged with felony murder with deadly conduct as the underlying felony.  The same counsel appointed to the prior cases was appointed to the murder case.

On October 27, Appellant's counsel filed a motion suggesting incompetency and requested a competency examination.  An expert found Appellant was incompetent to stand trial at that time.  In December 2021, the trial court ordered him committed for 120 days to restore his competency. Almost a year later in September 2022, a second competency hearing was ordered, and Appellant was found competent to stand trial.

After appointed counsel was allowed to withdraw, Appellant was appointed new counsel who filed two motions seeking to suppress both interviews.  He urged suppression of both recorded interviews as being involuntary and inadmissible under article 38.22 of the Texas Code of Criminal Procedure.  He also sought suppression of the second interview about the murder charge arguing it violated Appellant's Sixth Amendment right to counsel.  He theorized that because deadly conduct is a lesser-included offense of aggravated assault with a deadly weapon, and deadly conduct was the underlying felony for the murder case, Appellant's request for counsel on October 1 had attached to a yet uncharged murder case.

Following a pretrial hearing, the trial court denied Appellant's motion to suppress both the September 30 interview at the hospital and the October 7 interview recorded in

4

jail. The court found Appellant's recorded statements were voluntarily made and ruled the right to counsel had not attached to the uncharged murder case.

**ISSUES ONE AND TWO—DENIAL OF MOTION TO SUPPRESS BOTH RECORDINGS**

**APPLICABLE LAW – MOTION TO SUPPRESS**

A trial court's ruling on a motion to suppress is reviewed under a bifurcated standard where fact findings are reviewed for abuse of discretion and applications of law are reviewed de novo. *State v. Ruiz*, 581 S.W.3d 782, 785 (Tex. Crim. App. 2019). The trial court's determinations of historical facts and mixed questions of law that turn on credibility of the witnesses are afforded near total deference. *State v. Martinez*, 570 S.W.3d 278, 281 (Tex. Crim. App. 2019). The trial court's ruling will be upheld on any applicable theory reasonably supported by the record. *Ruiz*, 581 S.W.3d at 785.

**ANALYSIS**

The facts of the five underlying cases are not disputed. Thus, Appellant's complaints rest squarely on questions of law which we review de novo. *State v. Woodward*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

**October 7 Recording**

By his first issue, Appellant contends the trial court abused its discretion in denying his motion to suppress the recording made on October 7 because he was questioned without representation on the felony murder charge which arose from the same criminal

episode as the other pending assaultive charges. He posits the right to counsel attached to the uncharged lesser-included offense of deadly conduct, which was the predicate offense for felony murder. He argues the violation of his Sixth Amendment right to counsel requires the murder conviction to be vacated and remanded for a new trial. We disagree.

One of the primary purposes of the Sixth Amendment's right to counsel is to preserve the integrity of the attorney-client relationship once it has been established. *Patterson v. Illinois*, 487 U.S. 285, 291, 108 S. Ct. 2389, 101 L. Ed. 2d 261 (1988). The right is triggered "at or after the time that judicial proceedings have been initiated" by formal charge, preliminary hearing, indictment, information, or arraignment. *Brewer v. Williams*, 430 U.S. 387, 398, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977). Interrogation by law enforcement after charges have been filed is a critical stage of a criminal proceeding requiring the assistance of counsel. *Id.* at 401.

The right to counsel is offense specific. *Rubalcado v. State*, 424 S.W.3d 560, 570 (Tex. Crim. App. 2014). It attaches only to an offense for which a prosecution has been initiated. *Id.* But when the right to counsel attaches to an offense, "it does encompass offenses that, even if not formally charged, would be considered the same offense under the *Blockburger* test." *Texas v. Cobb*, 532 U.S. 162, 173, 121 S. Ct. 1335, 149 L. Ed. 2d 321 (2001) (citing *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306, 52 S. Ct. 180 (1932) (considering whether offenses are separate under double jeopardy doctrines). *Blockburger* established the rule that "where the same act or transaction constitutes a

6

violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not." *Blockburger*, 284 U.S. at 304; *Rubalcado*, 424 S.W.3d at 570–71. But because the right to counsel is offense specific, the Sixth Amendment does not necessarily extend to crimes that are "factually related" to those that have actually been charged. *Cobb*, 532 U.S. at 167 (citing *McNeil v. Wisconsin*, 501 U.S. 171, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991)).

In the underlying case, after complaints were filed in the assaultive offenses on September 30, Appellant was read his rights and interviewed by two sergeants that same day while in the hospital. When he was arraigned the following day, he requested counsel.

The second recorded interview which Appellant sought to suppress occurred on October 7, this time while he was in jail for the assaultive offenses. His rights were again read to him, and he did not hesitate in speaking with the sergeants. They clarified they were there only to interview him on the shooting that resulted in the death of an individual and not to discuss the four pending assaultive charges.[2] They asked him to tell his side of the story. He described the random shooting and expressed his guilt as well as sorrow for the victim's death. He informed the sergeants he drove to his grandmother's house after the shooting and parked in the garage because of the shattered passenger side

---

[2] Sergeant Lichtie testified there was not yet enough evidence to support an arrest warrant for the homicide and the investigation was ongoing.

7

window. And he reiterated he had cut his "dreads" because he was scared of being caught. According to Appellant, the shooting was a result of his rage and the shooting was "a release" of his anger.

A week later, Appellant was charged with felony murder with deadly conduct (discharging a firearm) as the underlying offense. At the pretrial suppression hearing, the trial court ruled as follows regarding the October 7 interview in jail:

> it is an offense that could stand alone . . . the murder could be prosecuted, based on the information in the October 7 interview. The assaults could not be prosecuted, based on the information in the October 7 interview. And I think that's an important distinction. So, I am not going to suppress the October 7 interview either. I don't think that there was a 6th Amendment violation.

The ruling continued, "not only did he get his Miranda Warnings at the hospital, he was told by the magistrate he had a right to an attorney, and that he could insist on having an attorney present before he gave an interview." Appellant "had the lucidity to request counsel when he was magistrated on the 1st . . . he could say . . . I don't want to talk to you without my lawyer. And that wasn't done."

Relying on *Rubalcado v. State*, 424 S.W.3d 560 (Tex. Crim. App. 2014), Appellant challenges the trial court's ruling that his Sixth Amendment right to counsel had not been violated during the interview for the yet uncharged murder. He contends his right to counsel had attached because the murder charge resulted from the same set of facts and same time period as the charges for aggravated assault with a deadly weapon. He asserts that because deadly conduct, the underlying felony for the murder case, is a

8

lesser-included offense of aggravated assault with a deadly weapon, it is the same offense under the *Blockburger* test.[3]  He asserts the State's emphasis on Appellant's incriminating statements from the interviews caused him harm beyond a reasonable doubt under Rule 44.2(a) of the Texas Rules of Appellate Procedure.

"Criminal episode" is defined as the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted on more than one person under the following circumstances: (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or (2) the offenses are the repeated commission of the same or similar offenses.  TEX. PENAL CODE § 3.01.  Offenses arising out of the same criminal episode may be tried together but the multiple offenses remain separate offenses and sentences for each are pronounced separately.  *Id.* at §§ 3.02(a), 3.03(a).

As the State argues, deadly conduct by discharging a weapon at a particular person or vehicle may be a lesser-included offense to the murder of that same person by the same bullet but it is not the same lesser-included offense of a murder victim under the *Blockburger* test.  The offense must be the same in both law and fact.  *Blockburger*, 284 U.S. at 304.  The fact component is determined by the allowable unit of prosecution.  For assaultive offenses, the allowable unit of prosecution is each victim.  *Paez v. State*, 709

---

[3] As the State notes, for purposes of the offense-specific Sixth Amendment right to counsel, separate offenses that occur within the same criminal episode are not the same as lesser-included offenses of the charged offenses.  In other words, Appellant's right to counsel for the assaultive offenses did not attach to the uncharged felony murder case simply because deadly conduct is a lesser-included offense of aggravated assault.

9

S.W.3d 718, 723 (Tex. App.—Amarillo 2025, pet. ref'd) (rejecting claim that double jeopardy barred multiple prosecutions because his conduct occurred in one brief event). The allowable unit of prosecution for deadly conduct involving the discharge of a firearm is each discharge. *Id.* Appellant's assault of one victim with a particular bullet and the murder of another victim with a different bullet does not constitute a single criminal episode. Additionally, aggravated assault with a deadly weapon and felony murder by deadly conduct require pronouncement of separate sentences even when tried together.

Under the *Blockburger* test, the uncharged murder offense is not the same offense as the three pending charges of aggravated assault with a deadly weapon. The assaultive offenses and felony murder require proof of a different fact—felony murder requires the additional fact of causing the death of an individual.

At the time the audio recording of the second interview was made on October 7, adversary proceedings for the murder charge had not yet commenced. Thus, Appellant's right to counsel in the murder case had not yet attached. Even so, Appellant was read his rights before the second interview and when asked if he was willing to waive his rights to speak to the sergeants, he answered, "yes, sir, I have no problem speaking to you." He was asked if he understood what "terminate" meant with respect to questioning and he stated he understood he could "stop" answering questions any time. Because he had requested counsel when he was arraigned for the assaultive offenses, he could have done so during the October 7 interview, but instead willingly spoke with the sergeants.

10

**September 30 Recording**

By his second issue, Appellant asserts the incriminating statements from the September 30 interview were involuntary and required suppression because of hospitalization due to Covid, the effects of prescription medications, and because his mental capacity to waive his rights was doubtful due to the subsequent finding he was incompetent to stand trial three months later. He contends his confinement in the hospital was tantamount to being in custody. We disagree.

Article 38.21 provides that an accused's statement may be used against him if it appears it was freely and voluntarily made "without compulsion or persuasion, under rules hereafter prescribed." TEX. CODE CRIM. PROC. art. 38.21. Article 38.22, section 6 requires the trial court to make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. *Id.* at art. 38.22, § 6. Voluntariness is reviewed under the totality of the circumstances. *Lopez v. State*, 610 S.W.3d 487, 494 (Tex. Crim. App. 2020). The State has the burden of showing a voluntary waiver of rights by a preponderance of the evidence. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010).

Initially, we address Appellant's argument that his presence in the hospital due to Covid made his interview a custodial interrogation. He relies on *O'Connor v. Donaldson*, 422 U.S. 563, 564, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). *O'Connor* involved Donaldson's civil confinement in a mental hospital against his will for fifteen years. Appellant's reason for being in the hospital was due to Covid. In his motion to suppress,

11

Appellant asserts he attempted to check himself in to the mental ward for a mental health crisis but tested positive for Covid and was instead placed in the Covid unit of the hospital. The record is not developed on Appellant's mental health crisis other than being found incompetent to stand trial for a short time. Unlike in *O'Connor*, Appellant never claimed he was being held against his will. One of the sergeants testified, "I want to clarify that, [Appellant] wasn't in custody, at that time." We decline to find his hospital stay equated to being in custody.

Before commencement of the interview, Appellant was read his rights and answered affirmatively when asked if he understood those rights. He was polite and cooperative but rambled at times. The sergeants began the almost hour-long interview with general questions to assess his ability to answer them. The questions were answered correctly, satisfying the sergeants who proceeded with the interview.

Appellant was asked if he knew anything about the shootings and answered, "[i]t had to be me." He recalled shooting at random vehicles and identified the general vicinity in which they occurred. He was heartbroken because his girlfriend was not responding to his calls or messages, and he was upset that he had been paid with a counterfeit bill when he sold marihuana to an individual. He acknowledged he "f***ed up." After the shootings he drove to his grandmother's house and parked his car in her garage because the passenger side window he shot out of was shattered. He claimed he told his grandmother about the shootings. When asked about the shell casings, he said he hid

12

them in his socks.  He also cut his "dreads" to avoid detection.  At no time did he request counsel.

One of the sergeants with sixteen years of experience testified he had mental health training in the academy and updated his training with Crisis Intervention Training.  He testified Appellant did make some "bizarre" statements regarding tattoos and believing he was in a fake mental hospital.  He also seemed surprised he had Covid.[4]  Although the sergeant testified that he usually ends an interview when he is concerned a suspect is incapable of understanding questions, he did not have any of those concerns with Appellant.

The recording of the interview does not show any compulsion or persuasion by the sergeants in extracting Appellant's confession.  The interview was cordial, and Appellant cooperated throughout.  He acknowledged his rights and chose to waive those rights and speak to the sergeants freely and voluntarily.

Although the evidence likely raised a fact issue on the voluntariness of his confession, the trial court instructed the jurors that unless they "believe[d] from the evidence beyond a reasonable doubt that the alleged confession . . . was freely and voluntarily made . . . without compulsion or persuasion . . . you shall not consider such

---

[4] If Appellant's confession was influenced by Covid or the effect of medications, such disabilities are not enough to render it inadmissible.  *Sandoval v. State*, 665 S.W.3d 496, 526 (Tex. Crim. App. 2022) (finding lack of sleep, injury, illness, and intoxication from drugs without more insufficient to find a lack of mental capacity to make a voluntary confession).

13

alleged statement or confession for any purpose nor any evidence obtained as a result thereof."

We conclude the trial court did not abuse its discretion in denying Appellant's motion to suppress the October 7 recording after finding his right to counsel in the murder case had not attached when he was interviewed on October 7.[5]  We likewise conclude the trial court did not abuse its discretion in denying suppression of the September 30 recording by finding Appellant's statements were voluntarily made.  Issues one and two are overruled.

**ISSUE THREE—TRIAL COURT'S FAILURE TO COMPLY WITH ARTICLE 38.22, SECTION 6**

Appellant contends, alternatively, that if a new trial is not ordered under either of his first two issues, a remand is required for the trial court to comply with article 38.22, section 6 of the Code of Criminal Procedure mandating findings of fact regarding the voluntariness of the October 7 interview.  Appellant cites to this Court's opinion ordering a remand for such findings in *Miranda v. State*, No. 07-23-00445-CR, 2024 Tex. App. LEXIS 4159, at *2 (Tex. App.—Amarillo June 13, 2024, order).  We disagree.

Article 38.22, section 6 requires the trial court to make independent findings in the absence of a jury on whether a statement was made voluntarily.  TEX. CODE CRIM. PROC. art. 38.22, § 6.  If the trial court rules a statement is admissible, it must enter an order

---

[5] Our conclusion dispenses with a need to address Appellant's argument that the Sixth Amendment required imputing knowledge of a request for counsel to the sergeants as State actors in the four assaultive charges.  *See Rubalcado*, 424 S.W.3d at 574.

14

stating its conclusion on voluntariness along with specific findings upon which the conclusion is made. *Ochoa v. State*, 707 S.W.3d 344, 360 (Tex. Crim. App. 2024). However, where the facts are uncontested, necessary findings may be inferred that support the trial court's ruling if the record supports the implied findings. *Id.* This Court's abatement order in *Miranda* in June 2024, predates the decision in *Ochoa* in which the Court of Criminal Appeals indicated that although failure to make findings of fact is erroneous, necessary findings to support the trial court's ruling may be inferred.

Additionally, article 38.22, section 6 is satisfied if the trial court dictates its findings into the record adequate to provide an appellate court with a basis on which to review the voluntariness question. *Murphy v. State*, 112 S.W.3d 592, 601 (Tex. Crim. App. 2003); *Wicker v. State*, 740 S.W.2d 779, 783 (Tex. Crim. App. 1987); *Cervantez v. State*, No. 07-14-00336-CR, 2015 Tex. App. LEXIS 7456, at *12 (Tex. App.—Amarillo July 20, 2015, pet. ref'd) (mem. op., not designated for publication).

In the underlying case, the facts are uncontested. At the conclusion of the suppression hearing, the trial court made findings on the record regarding the voluntariness of the September 30 interview. While remarking Appellant was not in custody while questioned at the hospital, the trial court noted Appellant did not present any medical evidence showing whether Covid or any medication impacted his mental health. Any mental health issues would have required speculation. The ruling continued as follows:

I think it's a pretty well settled part of the law that mental health ebbs and flows, there are things called lucid intervals. . . .

And so what matters most is how did he seem at the time that he was interviewed. An[d] in listening to the interview, he seems to understand what's going on. I never heard a time where he - - it seemed like he's zoned out, or was confused about what he was asking. . . . And so, I mean, I - - I think we have to be careful to not take things out of context, and - - and I think we just need to look at how he was responding to the question[s]. And to me, I'm comfortable that he knew what was going on.

\*\*\*

And then, - - so I'm going to find that that was voluntary. Just really based on the fact that I don't have any medical or mental-health evidence to the contrary. And, you know, this is such an interesting case too, because it's a case where he was found to be sane at the time of the offense, and then later found to be incompetent . . . . I am not suppressing the interview that was done at the hospital.

The trial court's findings dictated into the record and admitted into evidence leave no dispute as to the facts and are sufficient to satisfy the requirements of article 38.22, section 6. We need not abate the case for written findings of fact. Issue three is overruled.

## CONCLUSION

The trial court's judgments are affirmed.

Alex Yarbrough
Justice

Do not publish.

16